(50 South. 799.)

No. 17,786.

STATE v. PERRY.

(Nov. 29, 1909.)

1. BURGLARY (§§ 31, 45*) — BREAKING AND ENTERING WITH INTENT TO KILL — EVIDENCE.

Defendant was indicted for and convicted of having willfully, unlawfully, and feloniously broken into and entered in a dwelling in the nighttime armed with a dangerous weapon and having then and there willfully, unlawfully, and feloniously assaulted one of the occupants thereof with the intent to kill her.

On the trial the prosecuting witness testified to all the facts and circumstances which took place at the time of the entry. This she was entitled to do. Defendant's counsel moved the court to strike out the testimony and direct the jury to disregard it. This the court correctly refused to do. The testimony having been taken, the court had no right to strike it out and direct the jury to disregard it. It was for the jury to determine what the intent of the defendant was under a legal charge from the court.

[Ed. Note.—For other cases, see Burglary, Cent. Dig. §§ 83, 88, 110; Dec. Dig. §§ 31, 45.*]

2. CRIMINAL LAW (§ 364*)—CRIMINAL LAW—EVIDENCE.

The prosecuting witness, over defendant's objection, was permitted to testify to the calling of the defendant at her house just prior to the entry charged against him. There was no error in this. The two occurrences were substantially part of the res gestæ. The first calling served to give character to the second. It was for the jury to determine what effect should be given to the evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 805–818; Dec. Dig. § 364.*]

3. BURGLARY (§ 35*)—EVIDENCE—IDENTITY.

The prosecuting witness and another witness were permitted, over defendant's objection, to testify to a conversation between them shortly before the entry charged to have been made in the house of the witness and to show that defendant was present at that conversation, which conversation was assigned by the party who assailed her as his reason for making his first call at the house. There was no error in this. The testimony tended to connect the defendant with and identify him as the party who made the entry. It was for the jury to determine how far the testimony had the effect.

[Ed. Note.—For other cases, see Burglary, Dec. Dig. § 35;* Criminal Law, Cent. Dig. § 768.]

4. CRIMINAL LAW (§ 723*)—TRIAL—IMPROPER ARGUMENT OF DISTRICT ATTORNEY.

Defendant urges that the district attorney in his closing argument to the jury made remarks which were calculated to and had the effect of causing it to disregard the charge made to it by the court, that it could and should convict the defendant only if it was shown that the intent of the defendant in entering the house was that charged in the indictment, viz., an intent to kill, and were calculated to induce the jury to convict him, if it was shown that defendant had entered the house with an intent different from that charged; that the remarks so made were calculated to excite, and did excite, against the defendant race feelings to his prejudice.

The court finds that complaint well founded and sets aside the verdict and remands the case for a new trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1676; Dec. Dig. § 723.*]

(Syllabus by the Court.)

Appeal from Twenty-Sixth Judicial District Court, Parish of St. Tammany; Thomas M. Burns, Judge.

John Perry was convicted of breaking and entering a dwelling house in the nighttime armed with dangerous weapons with intent to kill, and he appeals. Reversed.

Miller & Morphy, for appellant. Walter Guion, Atty. Gen., and Lewis L. Morgan, Dist. Atty. (R. G. Pleasant, of counsel), for the State.

Statement of the Case.

NICHOLLS, J. The defendant was indicted by the grand jury of the parish of St. Tammany charged with having in said parish on the 2d day of June, 1909, with the

felonious intent to kill, at the time being armed with a dangerous weapon, to wit, a pine club, willfully, unlawfully, and feloniously in the nighttime break into and enter the dwelling occupied by Mrs. Ella O'Neill, she, the said Ella O'Neill, and other persons at that time being lawfully in said dwelling house, and at the same time and place willfully, violently, and feloniously made an assault upon the said Ella O'Neill with the felonious intent then and there to kill and murder her.

The jury before which he was tried found him "guilty as charged," and he was sentenced to be hanged. He has appealed to this court. During the trial he reserved nine bills of exception. The first bill of exception recites that on the trial of the case the state produced a witness, Ella O'Neill, who testified that the accused went to her house on the night of the 2d of June, 1909, and entered the house and knocked on the inner door, and, when she appeared at the door, stated that he had come back, and that he had come back to have her, and intended to have her that night, and raised a stick as though to strike her, when she called out to another woman, who was then in the house, "Here is that negro again," and ran toward her room, and that the negro then ran out of the house.

The defendant by his counsel thereupon asked the court to strike out this testimony and to direct the jury not to consider it, for the reason that it was evidence of an intent on the part of the accused to commit the crime of rape, and showed his intention and desire to have carnal knowledge of the person of the witness, and was not evidence of an intent to kill, which was the intent alleged in the indictment. This injunction and motion to strike out were overruled by the court; the court stating that it was a matter within the province of the jury. The judge, in signing the bill, said:

"That the evidence was properly within the province of the jury to say; the breaking and entering in the nighttime having been proven. The accused being at the time armed with a dangerous and deadly weapon, to wit, a piece of inch water-sobbed plank, about three inches wide and three feet long, in the kitchen after entering in the nighttime he drew it back to strike the woman Ella O'Neill, stating to her, 'I want you.' I could not say what he meant, unless it was to commit an assault with intent to kill, and no doubt there would have been a killing, had not the woman screamed and the other inmates of the house, a man and another woman, ran to her assistance, when the negro (accused) broke and ran. With this statement I sign the bill."

The second bill of exception recites that Ella O'Neill, a witness for the state, was interrogated as follows:

"Q. What happened just before the defendant made this second attack upon you in your house, if anything?"

Counsel of the defendant objected to this question for the reason that the question showed that the matter inquired about happened prior to the breaking and entering charged in the indictment, and was not admissible under the allegations of the indictment. The objection was overruled by the court, to which ruling defendant's counsel objected and reserved a bill of exceptions, and asked that the testimony of the witness be taken down as a basis for such bill. Thereupon the witness testified as follows:

"Q. Did you see him any time before that?
"A. He knocked at the door, and I said, 'What is it?' He said Mr. Jack sent for me. I said, 'For me?' He said, 'Yes.' I said, 'How?' He said, 'I have a horse and buggy out there.' He said Mr. Jack P. said for me to come down and he would show me a good time. I told him, 'All right,' to go out in front and I would meet him. I went out in front, and did not see the horse and buggy. I asked him, 'Where are the horse and buggy?' And he said, 'It is a little further down.' I asked him why he did not bring it up to the house, and he said Mr. Jack P. was a kind of suspicious old fellow, and he was afraid if anybody in Covington would see the horse and buggy they would recognize it. I told him, 'All right,' I would go up there with him. I said, 'Now I will stand here, and you go around and get the horse and buggy.' That he then makes an indecent proposal, and I said, 'What do you mean?' and as I said that he grabbed me with one hand on the neck and

tried to push me to the ground. There was a gentleman there, and he said, 'What is it?' and as he said that this negro ran, and I went back and met Mr. Loyd and a deputy sheriff. I think Mr. Eddie Lacroix and I told him about it. A very short time after I got back into the house, he came back again.

"Q. Anybody looking for him?

"A. Yes, sir; several people were looking for him.

"Q. How was he dressed?

"A. He had a dark overcoat and a light hat."

Thereupon counsel took this bill of exception, and, having submitted it to the district attorney, prayed the court to sign the same. The judge made the following addendum to the bill:

"I make this statement of facts to bear out my ruling which applies to bills Nos. 2, 3, and 4. Some few days before this alleged crime, the woman, Ella O'Neill, was seated in a butcher shop kept by J. A. Laborde, on the main street, this town. She stated to Laborde as set out in bill No. 4. The accused, John Perry, was the only party in the place at the time. On the night of the breaking, entering, etc., as charged, about 9 p. m., the accused, John Perry, knocked at the rear door of the house of Ella O'Neill, who went to the door, and the conversation took place as set out in bill No. 2, which shows the accused attempted to ravish the prosecuting witness. He was frightened off by a man coming up at the time. Ella O'Neill, after a few minutes' time, went back to the house, when shortly, not more than 10 or 15 minutes, the accused returned, and the circumstances took place as set out in bill No. 2. The accused was the only person knowing this butcher shop conversation, which he used as a subterfuge to entice the woman from her house. The testimony I considered admissible to show preparation, knowledge, and *identification.* This last occurrence is not only admissible for these reasons, but is in reality a part of the res gestæ. With this statement, I sign bills Nos. 2, 3, and 4."

Bill of exceptions No. 3 recites that Ella O'Neill was produced and sworn as a witness for the state and was asked the following question:

"Q. Did you ever have a conversation at Mr. Laborde's market with reference to Mr. P. visiting your place?"

Defendant's counsel objected to this question as immaterial, irrelevant, and as hearsay, and as not admissible under the allegations of the indictment. The court over-ruled the objection for the reason that the testimony was admissible to show previous preparation, intention, and motive. Defendant's counsel reserved a bill of exception, and asked that the testimony of the witness be taken down as a basis for the bill, and which testimony of the witness was as follows:

"Q. State the conversation that took place between you and Mr. Laborde in Mr. Laborde's market.

"A. I was down there. This negro was back in the market, and Mr. Laborde said to me that Mr. P. wanted to have a little talk with me. He said, 'You know that old fellow is kind of suspicious, and does not like to have anybody know that he goes down there,' and I said, 'Well, I would be glad if he would put in a good word for me.'

"Q. That took place in the hearing of the darky here?

"A. Yes, sir."

Thereupon counsel took this bill of exception, and, having submitted it to the district attorney, prayed the court to sign the same.

The fourth bill of exceptions discloses the fact that, over defendant's objections, the conversation which took place at Laborde's market between himself and Ella O'Neill was allowed to be proved by Laborde's testimony.

His testimony did not materially differ from that of Ella O'Neill on that subject. He testified to the fact that, when it took place, defendant was behind the block in the rear of the market. Witness said he did not know whether the accused heard the conversation or not. The same objection and the same ruling was made as had been made as set out in bill of exceptions No. 3.

Bill of exceptions No. 5 recites: That on the trial of this case, the district attorney, in his closing argument to the jury, having stated that the defendant was a negro, and that the woman O'Neill, whom the defendant was charged with having assaulted with intent to kill, belonged to the same race to which the jury belonged, counsel for defendant objected to such statements and remarks of the district attorney as intended and calculated to

inflame the minds of the jury and to excite race prejudice against the defendant.

That the district attorney again stated to the jury in his argument that, notwithstanding the fact that the prosecuting witness, Ella O'Neill, was a prostitute, she was a white woman, and belonged to the same race to which the mothers of the jury belonged. Counsel for defendant objected to such statements of the district attorney for the reason last stated, and alleged and urged that such remarks and conduct of the district attorney were calculated to and did affect the minds of the jury injuriously to the defendant, and he therefore took a bill of exceptions to the same, and, having submitted the same to the district attorney, prayed the court to sign the same. The district judge in his per curiam to the bill said:

"This statement of the district attorney you will see is not strong. It only bears an innuendo or insinuation. I instructed the jury immediately when it was made not to consider it, and reprimanded the district attorney for going out of the record."

The bill of exceptions No. 6 recites that defendant's counsel requested in writing the court to charge and instruct the jury as follows:

"The court charges you that the good character of a defendant, if proven, may in itself create a reasonable doubt of his guilt, when otherwise no such doubt would exist, and if in this case the evidence of good character, either by itself, or in connection with the other evidence, raises a reasonable doubt in your minds of the guilt of the accused, you have the right to entertain such doubt, and the defendant should have the benefit of the doubt."

This instruction the court refused to give in charge to the jury. To this ruling and decision of the court defendant reserved a bill of exceptions, and, having submitted it to the district attorney, prayed the court to sign the same. The judge in signing the bill stated that he refused this special charge on the ground that he had given it in his written charge on record.

Bill of exceptions No. 7 is to the refusal of the court to give the following special charge to the jury:

"The defense of an alibi—that is, that the defendant was not present at the commission of the crime, but was somewhere else—is as valid and legitimate a defense as any other, and, if in this case the evidence as to the whereabouts of the defendant at the time of the commission of the crime charged raises in your mind a reasonable doubt as to whether the accused could have committed it, it is your duty to give him the benefit of the doubt and find him not guilty. The court refused to give this instruction to the jury, to which ruling and decision the defendant reserved and took a bill of exceptions."

The district judge in signing the bill said:

"That this special charge was refused and given by me under this charge. I charged from Marr's Criminal Law under the title 'Alibi.' "

Bill of exceptions No. 8: Defendant's counsel requested the court to charge the jury:

"That, if the evidence warrants it, you may find any one of the following verdicts:
"(1) Guilty as charged.
"(2) Guilty as charged without capital punishment.
"(3) Guilty of an assault with a dangerous weapon with intent to kill.
"(4) Guilty of simple assault.
"(5) Not guilty."

The court refused to give this instruction, on the ground that the evidence did not justify these lesser verdicts.

To this ruling and decision defendant excepted.

Bill of exceptions No. 9: Defendant moved the court to set aside the verdict of the jury and to grant a new trial for the following reasons:

(1) That the verdict is contrary to the law.

(2) That it is contrary to the evidence.

(3) That it is contrary to the charge of the court.

(4) That the court erred in refusing to give to the jury the second instruction and charge requested by the defendant.

(5) That the court erred in refusing to give

to the jury the third instruction and charge requested by the defendant.

(6) That the court erred in refusing to give to the jury the fourth instruction and charge requested by the defendant.

(7) That the court erred in permitting the witness for the state to testify to an assault claimed to have been committed on her by the defendant with intent to ravish and carnally know her outside of her house and previous to the alleged breaking and entry charged in the indictment, and in permitting the district attorney to comment in his argument to the jury upon such alleged assault.

(8) That the minds of the jury were improperly influenced, and their verdict the result of the inflammatory and intemperate remarks of the district attorney in his closing argument to the jury, making appeals to the prejudices of the jury which were calculated to excite, and did excite, race prejudice against the defendant, a negro, as objected to by the defendant at the time, and by the statement made to the jury by the district attorney, among other statements of the same tenor and effect, that upon their verdict depended the sanctity of every fireside in St. Tammany parish and the safety of their wives, daughters, and mothers, and that if they acquitted the defendant they would turn loose upon the community a horrible horde of depraved criminals, who would prey upon the virtue of their families and would bring on mob law and violence and do away with the orderly administration of justice.

(9) And for other good and sufficient reasons as shown by the bills of exception taken by the defendant during the course of the trial.

The motion for a new trial was overruled, and a bill of exception reserved. The bill was signed by the district judge without comment after having been submitted to the district attorney.

## Opinion.

### First Bill of Exception.

Ella O'Neill, the person upon whom the defendant was charged with having made an assault with an intent to kill, being put upon the stand as a witness, testified to all the facts and circumstances which occurred at the time of the entry into the house. These she was entitled to testify to. She did not undertake to express any opinion as to what the intent of that was with respect to anything which was done by the person entering at that time. All the facts which occurred at the time being shown, it was for the jury, under legal instructions from the court, to determine what that intent was. The court was without authority to strike out the testimony and direct the jury not to consider it. Such a course, if permitted, would practically withdraw any case from the consideration of a jury. In this case the court, at the request of defendant's counsel, in his charge to the jury instructed it that the state was required to prove the intent charged in the indictment—that is, the intent to kill—and evidence of any other intent cannot be considered by you, and the accused cannot be convicted on evidence of other intent than that charged in the indictment, namely, an intent to kill. The only intent you are to consider is the intent to kill. You cannot legally convict the accused under the indictment for breaking and entering with intent to rob, to steal, to commit rape, or any other crime than the one charged in the indictment, to wit, the intent to kill Ella O'Neill. State v. Meche, 42 La. Ann. 273, 7 South. 573.

### Second Bill of Exceptions.

The two occurrences testified to by Ella O'Neill—those which took place at her house and those which occurred just outside of the house—followed each other so closely as practically to constitute one single transaction.

They bore relevant and important relation to each other. The intent and purpose of the entry were fairly and legitimately permitted to be passed upon under the light thrown upon them by the almost simultaneous action (just before he did so) of the party who entered the house. His first actions gave character to those which followed afterwards. State v. Marceaux, 50 La. Ann. 1141, 24 South. 611. Defendant's counsel, in commenting in his brief upon this bill, states that the man referred to by the witness as having frightened her assailant away said that both the negro and the woman ran away; but this statement is sustained by nothing shown in the record.

The purpose of the statement in the brief is evidently to suggest to the court the probability or possibility that the woman was not in reality assaulted.

### Bills of Exception Nos. 3 and 4.

Refer to the same facts and present the same questions of law.

Ella O'Neill and Laborde were permitted to testify to a conversation which they had together at the former's butcher establishment. Defendant's objections were that the testimony was irrelevant, immaterial, and hearsay, and inadmissible under the allegations of the indictment. We do not think that the testimony was irrelevant and immaterial. It had a tendency to connect the defendant with the occurrences at Ella O'Neill's house. It served to some extent in view of what the witness testified the person who she declared had assaulted her outside her establishment said in reference to Mr. P—— when he first spoke to her, and in view of the fact that both witnesses testified that defendant was the only person present in Laborde's butcher shop when the conversation between the two witnesses took place in regard to P—— *identifying* the defendant as the party who assaulted her.

To what extent that testimony should influence the jury was for that body to determine.

### Bill of Exception No. 5.

The complaint of the defendant of the remarks made by the district attorney in his closing argument to the jury is in our opinion exceedingly serious in character. The statement made by that officer to the jury that, "notwithstanding the fact that the prosecuting witness was a prostitute, she was a white woman, and belonged to the same race to which their mothers belonged," was evidently intended to direct its attention specially to a consideration of the fact that defendant's primary object and intent in going to Ella O'Neill's was to rape her—a crime known to be really more abhorrent to a jury than that of killing a woman.

If the jury could be brought to know and feel that the accused intended to rape the woman, the intent to kill would play very little part in reaching its conclusions as to what the verdict should be. It would look no further for a reason to justify a verdict of guilty than an intent to rape. There would be no reason for the district attorney to refer to the fact that the prosecuting witness was a prostitute if the case was one involving simply an intent on the part of the accused to kill her. No one would for a moment think a prostitute less entitled to protection from being killed than any other person in the community; but, when it was a question of rape, the jury would be likely to question the reality of a woman of that character having been made the object of an assault of that type upon her, or of her being greatly injured or aggrieved if it were true—hence the necessity for a special appeal in favor of her right to protection against being carnally known against her will, especially by a negro. The extreme abhorrence of the people of this state to the crime of rape, par-

ticularly of the rape of a white woman by a negro, is so great that, if the jury could be made to believe that an assault for that purpose had been attempted, the defense would stand little or no hope of acquittal, even if an attempt to kill had been utterly disproved, and no matter what a judge might charge as to the necessity of proving an intent to kill as alleged. We think the district attorney, as an officer of the state, was at fault in pressing, as he did, before the jury, the fact that the accused intended to rape the woman, and thus weakening, as he did, the force of the charge of the judge that the accused could not be legally convicted unless shown to have entered the house with an intention to kill.

We do not think, under the circumstances, that the accused has been fairly and legally convicted, and we are of the opinion that the verdict of the jury should be set aside, and the judgment therein should be avoided, annulled, and reversed, and the cause remanded for a new trial.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the verdict of the jury be set aside, and the judgment therein, herein appealed from, be annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that this cause be remanded to the district court and reinstated on the docket, and a new trial be given to the defendant.