278 So.2d 86 (1972)
STATE of Louisiana
v.
Roosevelt KAUFMAN and Iley Dotch.
No. 51866.
Supreme Court of Louisiana.
December 11, 1972.
Dissenting Opinion January 16, 1973.
On Rehearing May 7, 1973.
David W. Robinson, John Schwab, Watson, Blanche, Wilson, Posner & Thibaut, Baton Rouge, for defendants-appellants.
*87 William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., Sargent Pitcher, Jr., Ossie B. Brown, Dist. Attys., Ralph L. Roy, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Roosevelt Kaufman and Iley Dotch were charged with murder (La.R.S. 14:30); they were jointly tried, convicted and sentenced to death. On this appeal, defense counsel states these facts: The bodies of John L. House and Jessie Guthrie were found during the midmorning hours of June 9, 1970, in or near a diversion canal in Scotlandville, East Baton Rouge Parish. There was evidence to show that at some time between 4:00 and 5:20 that morning Guthrie and House were taken from a service station, at which they were working, to the location described above. Evidence was also presented tending to show that these two men may have been shot with a sawed-off shotgun owned by one Willie Holmes, also known as "Black Domino". In the course of investigation, the ownership of this shotgun was determined; whereupon Holmes was questioned and incriminated the defendants, Dotch and Kaufman, by relating conversation he had with them after the crimes were supposedly committed.
It was also established at the trial that during the course of the evening of June 8, 1970, Dotch, Kaufman, Holmes and one Delores Williams were together and that the shotgun in question had at times been in their automobile.
A room at King's Motel was also shown to have been rented to a woman identified as Delores Williams at 3:00 or 4:00 and that Dotch appeared at the motel a little later inquiring as to the location of the room.

I.
The first issue, presented by four bills of exceptions (Nos. 1, 2, 6 and 7), involves excusing four prospective jurymen who answered on voir dire examination they could not, under any circumstance, render a verdict for which a capital sentence could be imposed. The ruling in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L. Ed.2d 776 (1968) is relied upon by defendants. However, since the Witherspoon Case, the United States Supreme Court has, in effect, declared the death penalty unconstitutional as presently administered in Louisiana in murder prosecutions. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). A number of cases in which this Court affirmed convictions where a death sentence was involved have been remanded to be considered in light of that holding.
On remand we followed the procedure first adopted in State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971), and State v. Duplessis, 260 La. 644, 257 So.2d 135 (1971) by remanding the case to the trial court for resentencing to life imprisonment. If we conclude that this conviction should be affirmed, we shall remand this case with instructions to sentence the defendants to life imprisonment. See State v. Franklin, 263 La. 344, 268 So.2d 249.
Because of the unconstitutionality of the death penalty in this case since Furman v. Georgia, a prospective juryman's attitude toward the death penalty is no longer relevant. The issue presented by those bills, therefore, is moot.
Defense counsel argues that although excusing these four prospective jurors for their attitude toward capital punishment, when capital punishment is no longer constitutional, may render that complaint moot, a valid complaint nevertheless subsists. For the unnecessary exclusion of these prospective jurors, if permitted to stand, would unconstitutionally operate to deprive an accused of a trial by jurors who would be acceptable on all other grounds.
This contention lacks merit in the absence of a showing that the accused *88 were compelled to accept an obnoxious juror. Defendants' right in impaneling a jury is one of rejection, not selection. State v. Spencer, 257 La. 672, 243 So.2d 793 (1971); State v. Campbell, 173 La. 831, 138 So. 853 (1931).

II.
During examination of prospective jurors on their voir dire, the State's attorney sought to elicit from several of them whether they would accept and apply the presumption that one in the unexplained possession of property that has been stolen is presumed to be a thief; and, further, whether they would accept the proposition that one in the unexplained possession of property stolen during the commission of a murder is presumed guilty of that murder.
Defense counsel objected that it was improper for the State to refer to a presumption applicable to a crime other than that for which these defendants were charged. It is further contended that this presumption destroys and nullifies the constitutionally guaranteed presumption of innocence which attends all persons accused of crime.
The objection that the presumption applying to one in possession of property recently stolen should not be referred to in this murder prosecution is not well-founded. Evidence was offered at the trial that after the bodies of the victims were found Kaufman was in possession of a number of packages of cigarettes. It was also shown by the evidence that a quantity of cigarettes were taken from the place of business where the victims were working shortly before their bodies were found.
The relevancy of the State's inquiry is therefore manifest. Murder is defined in one sense as the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of aggravated burglary, armed robbery, or simple robbery, even though he has no intent to kill. La.R.S. 14:30. Unexplained possession of property recently stolen from the scene of a killing presents evidence that the killing could have occurred while the property was being taken during a burglary or robbery. The evidence, later produced, that the killing was with a gun satisfies the requirement that it be aggravated.
The objection that reference to the presumption defeats the presumption of innocence is answered in Section 432 of Title 15 of the Revised Statutes in these words:
A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption attaching to the regularity of judicial proceedings; that the grand jury was legally constituted; that public officers have done their duty; that a relation or subject-matter once established, continues, but not that it preexisted; that the defendant intended the natural and probable consequences of his act; that the defendant is innocent; that the defendant is sane and responsible for his actions; that the person in the unexplained possession of property recently stolen is the thief; that evidence under the control of a party and not produced by him was not produced because it would not have aided him; that the witnesses have told the truth. (Emphasis added.)
These legal presumptions must arise from facts proven by competent legal evidence. The presumption is simply a reasonable conclusion the law draws from proven facts. The presumption is rebuttable. The sole effect of the rebuttable presumption is to shift the burden of producing evidence during the progress of the trial. The presumption that the person in the unexplained possession of stolen property is the thief obtains only until evidence to the contrary is introduced.
*89 This statute does not change the rule as to the presumption of innocence or place any affirmative burden upon the accused to take the stand and testify, for, when all evidence has been adduced, the State must nevertheless have overcome the presumption of innocence and the guilt of the accused must have been established beyond a reasonable doubt. To say that a person in the unexplained possession of property recently stolen is presumed to be the thief, takes for granted that property has been recently "stolen" with all that term implies; that the person against whom the presumption operates is in possession of that recently stolen property and that he refuses or is unable to satisfactorily explain his possession. This would at least cast grave doubt upon the presumption of innocence. After all, the presumption of innocence can also be rebutted. The quality and quantity of the evidence required to do this is for the jury to decide. State v. Nix, 211 La. 865, 31 So.2d 1 (1947). See also State v. Odom, 247 La. 62, 169 So.2d 909 (1964); People v. Kulig, 373 Ill. 102, 25 N.E.2d 73 (1940); 22A C. J.S. Criminal Law § 597.

III.
In his opening statement the State's attorney read and explained to the jury the following definition of criminal conspiracy taken from Article 26 of the Criminal Code:
Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime, provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.[1]
* * * * * *
Also, from Article 455 of the Code of Criminal Procedure he read the following:
Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established.
Defense counsel objected that this reference to the law of conspiracy was irrelevant to the instant murder prosecution.
In his closing argument to the jury the prosecution again referred to the law of conspiracy as it applied to the facts of the case at bar and illustrated his argument with a hypothetical set of facts.
Finally, the trial judge instructed the jury on the law of conspiracy by reading the same portions of Article 26 of the Criminal Code and Article 455 of the Code of Criminal Procedure. The defense then reiterated the objection that the law of conspiracy was irrelevant, and failure to read the penal provision of the crime of conspiracy was prejudicial.
In brief, defense counsel informs us that during the trial the judge consistently allowed the State to introduce evidence in an attempt to prove conspiracy. According to the brief, however, conspiracy was not shown. The argument based upon the evidence is improper because the evidence and testimony forms no part of a bill of exceptions. The transcript should have been made part of the bill of exceptions to either support or refute the existence of evidence of conspiracy. In its absence it must be presumed that the judge's *90 reference to conspiracy was based upon evidence of a conspiracy. La.R.S. 15:432.
It will not do for counsel to only attach to the bill of exceptions that portion of the evidence which supports his contention and omit that portion supporting the trial judge's ruling. When there is a claim of a lack of evidence concerning a particular issue, it is more often than not necessary to make the entire record part of the bill of exceptions upon which such a negative contention is based.
The objections that reference to conspiracy in this murder prosecution was irrelevant and therefore prejudicial is also not well-founded. It is well settled that when multiple defendants are charged with a substantive offense, evidence is admissible of a conspiracy to commit the crime charged. State v. Robichaux, 165 La. 497, 115 So. 728 (1928); State v. Gebbia, 121 La. 1083, 47 So. 32 (1918); State v. Ford, 37 La.Ann. 443 (1885).
As a general rule, the court should instruct on every essential question in the case to properly advise the jury on the issues of law. La.Code Crim.Proc. art. 802. Ultimately, whether a conspiracy has been established is a question of fact for the jury, but the jury must be instructed on the law of conspiracy so that the jury may apply the law in the fact-finding processthat is, the law must guide the jury in its effort to decide which facts are relevant to the ultimate conclusion. And this rule obtains in a prosecution for murder where two or more persons are charged. State v. Skinner, 251 La. 300, 204 So.2d 370 (1967). For the same reasons, no error was committed when the State's attorney referred to the law of conspiracy in his opening statement.

IV.
This issue concerns the competency of the witness Patricia Butler, Kaufman's common-law wife, to give evidence against him. When she was called as a witness for the State, Kaufman's counsel challenged her competency and moved to introduce evidence that theirs was a long-standing relationship; that children were born of the illicit union and that no legal impediment existed to their marriage. The trial judge ruled that notwithstanding the evidence sought to be introduced, Patricia Butler was competent to testify against Kaufman because the privilege between husband and wife does not apply to a socalled common-law marriage.
When Patricia Butler was asked whether Kaufman had made an inculpatory statement to her, objection was again made and overruled.
Louisiana law provides that "Private conversations between husband and wife shall be privileged", and, "Neither husband nor wife shall be compelled to be a witness on any trial upon an indictment, complaint or other criminal proceeding, against the other." La.R.S. 15:461. The cases have held, however, that this privilege does not impair the competency of a man's concubine to testify against him. State v. Brown, 28 La.Ann. 279 (1876); Meunier v. Covet, 2 Mart.O.S. 56 (La.1811).
For the same reasons there was no error when the State's attorney made reference to his opening statement to the proof he would produce by Patricia Butler's testimony against Kaufman.

V.
It is contended that the State should have tried these defendants separately, for by trying them jointly the rule established in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), was violated. There it was held that admission at the joint trial of a codefendant's extrajudicial confession incriminating the other defendant violated the latter's right of cross-examination under the Confrontation Clause of the Sixth Amendment to the United States Constitution. The trial judge overruled the contention on the authority of State v. Hopper, 253 La. *91 439, 218 So.2d 551 (1969), and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).
The several witnesses who testified to extrajudicial inculpatory statements made by Kaufman and Dotch were carefully instructed by the State's attorney when the question was asked to testify only to the statements made by either Kaufman or Dotch concerning himself. They were instructed not to testify to anything in the inculpatory statement which may have concerned someone else. Then, when defense counsel objected, the witnesses were instructed by the judge not to testify concerning what was said by Kaufman or Dotch, as the case might be, except insofar as the statement concerned the particular defendant whose inculpatory statement was then the subject matter of interrogation. Moreover, the jury was additionally instructed that the testimony was to be considered as relating only to the particular defendant whose inculpatory statement was then in question and no one else.
And when the witnesses were permitted to testify, they testified only with respect to the inculpatory statement of the one defendant whose statement was then at issue without mention of or reference to the other. The State's attorney, the trial judge and the witnesses were extremely careful when they were concerned with the inculpatory statement of one defendant not to refer to the other defendant in any particular. Thus no deprivation of the right to confrontation occurred. The inculpatory statement complained of made no mention of the other defendant and the inculpatory statement was not testimony "against" the other defendant.
The rulings of the trial judge on this issue were correct.

VI.
In an effort to show a prior inconsistent statement of the witness, Delores Williams, the State's attorney asked her, "Do you deny you told Patricia Butler that these (referring to the victims) were just two white honkys who got killed, and if it had been two colored people they would have forgotten about it? Do you deny that you told her that?" Defense counsel objected that a proper foundation had not been established to permit this question, and he moved for a mistrial.
According to Section 493 of Title 15 of the Revised Statutes,
"Whenever the credibility of a witness is to be impeached by proof of any statement made by him, contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must first be called to the time, place and circumstance and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible." (Emphasis added.)
Obviously it was entirely proper for the State's attorney to first ask the witness whether she made the statement, the credibility of which he sought to impeach, for that is precisely what the quoted statute requires. When the defense objection was overruled and a mistrial was refused, we presume that if the State's attorney continued the questioning, he complied with the remaining steps required by the statute to successfully impeach Delores Williams. The bill of exceptions does not disclose what transpired subsequently.
Mistrials are permitted under certain limited circumstances, such as inability of the jury to agree, a defect in the proceeding which would make a verdict reversible, defendant's lack of capacity to proceed, impossibility of the trial to proceed, etc. La. Code Crim.Proc. art. 775.
The circumstances do not warrant a mistrial on this issue.

*92 VII.
Patricia Butler was called as a witness by the State and was questioned by the State's attorney as to a statement she gave the police officers during the course of the investigation. This interrogation was for the purpose of impeachment, the State's attorney having pleaded surprise. While being interrogated, the witness declared, "I said when I came in all this is a lie; I mean Roosevelt didn't tell me nothing. I lied." She was then asked if she did not tell the police officers that Kaufman told her "that three shots were fired in killing these two men." Objection was made that after the witness admitted she lied any further questioning to support impeachment was irrelevant.
Aside from the fact that the question of relevancy is the weakest of objections, it was required of the State's attorney that he pose the specific question he did ask relating to the statement made by the witness if he desired to impeach her in that respect. La.R.S. 15:493. There is no merit in this defense objection.

VIII.
Patricia Butler, the State's witness, was questioned about a conversation she had with Delores Williams, another witness previously called by the State. She was asked, "What did she tell you on that occasion about this thing?". An objection of hearsay was made by the defense. Since the purpose of this question was to impeach and show bias of Delores Williams, who had previously denied making a statement to Patricia Butler at the time, it is an exception to the hearsay rule. Moreover, there is no showing that this question affecting Delores Williams had any prejudicial effect upon these defendants.
Patricia Butler then answered the question saying, "It was a lot concerning Roosevelt and it was thatshe said if we was talking, she said if Roosevelt and them be found guilty, I mean convicted, he wasn't in his right mind, and she said something about the honkys." The defense then moved for a mistrial on the grounds of hearsay and because the question was an improper reference to race.
It is grounds for a mistrial if a "remark or comment" made within hearing of the jury by the district attorney during the trial refers to race, if the remark or comment is not material and relevant. La.Code Crim.Proc. art. 770. Clearly, however, when the district attorney is questioning a witness concerning a reference to race made by another witness to establish the bias of the latter witness, it is not the type of "remark or comment" contemplated by Article 770.
After the trial judge denied the motion, the State's attorney stated in the presence of the jury, and for the record, that he was offering the testimony of Patricia Butler to impeach the testimony of Delores Williams. This was objected to as an attempt by the State to use this impeachment testimony to present inflammatory statements to prejudice the jury.
The weight to be given to Patricia Butler's testimony was for the jury. As noted before, it had not such a reference to race which the law prohibits.
The remaining questions seeking to impeach the testimony of Delores Williams or to show her bias were also proper. The reasons already assigned are applicable to them also.

IX.
In his closing argument to the jury the State's attorney, in referring to the testimony of Delores Williams, one of the State's witnesses, stated: "She denies that she told her don't worry about these two white honkys." Whereupon defense counsel moved for a mistrial on the grounds that the statement was highly inflammatory, based on race, and was volunteered by the State's attorney.
*93 As previously pointed out, this is not a reference to race reprobated by Article 770 of the Code of Criminal Procedure. To the contrary, the statement was a reference to relevant evidence and a permissible conclusion of fact that the State could draw from the evidence admitted. La.Code Crim.Proc. art. 774.

X.
The Court is urged to decide that physical evidence retained at any time since the alleged crime in the custody of a lay witness for the State instead of the Sheriff or other official or their employees is improper; that a showing that physical evidence retained in the custody of a State witness, not a law enforcement agency, presents an inadequate predicate for admission of physical evidence at the trial in that the chain of custody and connexity has been broken. No authority is cited to support the contention.
There is no merit in such a proposition. Custody and connexity of physical evidence is a matter of fact for the jury to determine; its relevancy for admission a question for the judge. State v. Coleman, 254 La. 264, 223 So.2d 402 (1969). No requirement exists in law that the evidence can only be preserved by law enforcement agencies or officers.

XI.
Although the normal order of trial procedure requires the presentation of the evidence of the State, and of the defendant, and of the State in rebuttal, "the court in its discretion may permit the introduction of additional evidence prior to argument." La.Code Crim.Proc. art. 765. Therefore, when the State was permitted after the defense had rested to call Willie Moore for the first time as a witness in chief and as a rebuttal witness, the propriety of this action rested in the sound discretion of the trial judge.
The State related that this witness was located only an hour before trial. Inasmuch as no showing was made that the State was not diligent in obtaining the witness, no abuse of discretion is shown.

XII.
Counsel for Kaufman filed a supplemental motion for a new trial based upon newly discovered evidence. To support the motion, he attached his affidavit and the affidavit of Verna Kaufman. His affidavit set forth that on July 7, 1971 Verna Kaufman came to his office and informed him that on Tuesday, June 9, 1970 at about 4:00 in the afternoon Iley Dotch told her that during the preceding evening and morning he, Delores Williams and Willie Holmes took Kaufman to a motel in a drunken and drugged condition and left him there. They then took his car and robbed a service station. She further told counsel that she was afraid to disclose this information to the authorities, the parties or counsel involved in the trial until she heard Kaufman had escaped from the parish jail. Verna Kaufman's affidavit was to the same effect.
A bill of exceptions was reserved to the court's refusal to grant a new trial. In our view the evidence was cumulative and there was no abuse of discretion in the ruling. State v. Dale, 200 La. 19, 7 So.2d 371 (1942).
For the reasons assigned, the convictions are affirmed; the sentences are set aside; and the case is remanded to the trial court with instructions to sentence defendants to life imprisonment.
McCALEB, C. J., concurs in the decree.
BARHAM, J., dissents with reasons.
TATE, J., dissents and assigns written reasons.
DIXON, J., dissents.
TATE, Justice (dissenting).
This murder prosecution arises out of the brutal killing of two service station attendants. *94 The defendants are charged with their murder in connection with the armed robbery of the service station. I can only infer that the circumstances of this brutal crime have led my conscientious brethren of the majority unconsciously to overlook serious errors of law and improperly prejudicial testimony and tactics.
Without detailed exposition I shall list some of the reasons which, upon application for rehearing, may impel this court to further study of the issues presented by this appeal:
(1) The state was permitted to question prospective jurors on voir dire about whether they would accept a legal presumption that "if property is stolen during the commission of a homicide, the unexplained possession of property stolen in a homicide, the possessor unexplainedly is presumed to have committed the homicide." Tr. 75, attached to Bill No. 4. No authority is cited for this proposition, and this is not the Louisiana rule. (Under La.R.S. 15:432 there is a presumption "that the person in unexplained possession of property is a thief ...") Over objection, the three jurors then selected were permitted to state they accepted this "rule of law".
This was prejudicial. Some cigarettes were stolen in the service station robbery; there was evidence that the defendants were in possession of cigarettes, although they were not identified as those stolen from the service station. This may have created a presumption that they robbed the service station and thus be evidence relevant to proving that they did the killing in connection therewith. However, the possession of the cigarettes did not relieve the state of its burden of proving that the defendants killed the attendants or that the attendants were killed during the perpetration by them of this felony. See La.R.S. 15:432: "A legal presumption relieves him in whose favor it exists from the necessity of any proof * * *."
(2) The defendants were charged with murder, yet the prosecutor was permitted in his opening statement to read the definition of criminal conspiracy, La.R.S. 14:26, and to argue the definition to the jury, and to secure a charge on it. The prosecution was also permitted to take advantage of La.R.S. 15:455, which provides that a conspirator is bound by declarations of other co-conspirators, although made outside of their presence, but with this caveat: "But to have this effect a prima facie case of conspiracy must have been established."
It is defendant Kaufman's theory, somewhat corroborated by the State witnesses, that, although he was with the defendant Dotch and with Delores Williams heavily drinking before the murder, he was passed out in a hotel room at the time any murder and robbery took place. The defendants further claim that, although the State introduced much improper testimony in the guise of proving declarations made afterwards by co-conspirators, in fact no conspiracy was proved.
I am unable to understand the majority's refusal to pass upon these substantial contentions for its indicated reason that the transcript is not attached to the numerous bills attacking the State's conspiracy theory. On applications for new trial the conspiracy objections were reurged, and to them was attached the entire transcript of the testimony taken in the trial. Bill No. 46, p. 504 at 505. How could the defendants any earlier have attached the entire transcript?
(3) If the prosecution's conspiracy theory were valid, then the prosecuting attorney expressed his personal conviction of the guilt of one of the co-conspirators. It was apparently the State's theory that Delores Williams, who was with the defendants in the evening, and the defendants conspired to rob the service station and to kill the attendants. The district attorney stated: "I say there's some lying here. Delores Williams lied. I think I have already said that Delores Williams is not on *95 trial here today, but she is a murderess, she was right there with them, I am convinced she drove that car." The defense objected that the prosecutor was "stating his personal convictions in this case when they were unsupported by one iota of evidence." Tr. 491, attached to Bill No. 44. The trial court overruled the defense objection that the argument was not "confined to evidence admitted", La.C.Cr.P. Art. 774, and that moreover this speculation on the part of the prosecutor included a prohibited expression of his personal conviction of the co-conspirator's guilt.
(4) The prosecutor improperly and repeatedly injected the issue of race into this prosecution of two black men for the murder of two white men. The defendants were entitled to a mistrial, as requested. La.C.Cr.P. Art. 770(1).
The circumstance arose in this manner. Delores Williams was called as a witness by the state. She was asked if she denied she had told another state witness "that these were just two white honkys who got killed, and if it had been two colored people they would have forgotten about it". Bill No. 21.
The State neither at trial nor in brief ascribes any plausible reason why this prior statement, which the State injected into the case and as to which no foundation was laid, was material or relevant to the trial of these two defendants on trial for murder. The prosecutor asked this, Tr. 574, on redirect examination, Tr. 572ff., of its own witness, Delores Williams, Tr. 536ff. In the direct and cross examinations such alleged statement by the witness to Pat Butler was never touched upon. The prior statement is thus not "contradictory to his [her] testimony" at the trial, a predicate for admission of the prior contradictory statement. La.R.S. 15:493. Further, even if the predicate had been laid, La.R.S. 15:494, provides: "It is not competent to impeach a witness as to collateral facts or irrelevant matter."
When the other witness (Pat Butler) was on the stand, the prosecution asked her what Delores Williams had said about "they honkys". Bill No. 27, Bill Nos. 28, and 29 concerned further investigation into this question. Objections and requests for mistrial were refused, and bills reserved.
It is difficult to ascribe any materiality or relevance to the introduction of such testimony by the State in the trial of the two defendants for murder. See La.R.S. 15:494: "It is not competent to impeach a witness as to collateral facts or irrelevant matter." In view of the prosecution's repeated exploration of this irrelevant statement, and its further reference to the statement in his closing argument ("She denies that she told her don't worry about those two white honkies"), over overruled objection (Bill No. 43), I am led to conclude regretfully that the sole purpose of the injection of the race issue was to prejudice the trial jury.
(5) The previous prejudicial testimony sought to be introduced is, moreover, hearsay as to the defendants.[1]
I am not unmindful of the brutality of the crime with which these defendants are charged. Nevertheless, these defendants like all others before our courts are entitled to fair trial and to due process of law as guaranteed by our state and federal constitutions. For the reasons assigned, as well as several errors not discussed, I must therefore respectfully dissent.
BARHAM, Justice (dissenting).
I dissented from the opinion on original hearing and stated that I would assign reasons. *96 Before I had an opportunity to draft those reasons, we ordered a rehearing in the matter. I decline to file written reasons at this time, for they would indicate a predisposition of my determination on the rehearing.

ON REHEARING
TATE, Justice.
The defendants were convicted of murder, La.R.S. 14:30, and sentenced to death.
The defendants were charged with a brutal crime. Two service station attendants were robbed and then brought to a deserted area and executed. We are impelled to reverse these convictions, however, because of grossly prejudicial trial error in violation of Louisiana statutory and constitutional protection of those accused of crime.
The most serious errors, upon which we reverse, are (1) the deliberate and illegal injection of racial prejudice into the trial, and (2) erroneous instructions to the jury venire, which had the effect of depriving the defendants of the presumption of innocence allowed them by law and of relieving the State of its duty of proving that the defendants were guilty of the murder with which charged.

Racial Prejudice

(Bill Nos. 21, 27, 28, 29, 31, 43)
Under Louisiana law, a mistrial is mandatory when a prosecutor refers "directly or indirectly" to race or color, where "the remark or comment is not material and not relevant and might create prejudice against the defendant in the mind of the jury." La. C.Cr.P. Art. 770(1).[1]
The prejudicial errors occurred in this context: The two black defendants were on trial for the brutal murder of the two white victims before at white jury. The errors were committed as follows and, in fact, permeated the trial proceedings:
The State called as its witness Delores Williams. She had been riding with the defendants on the night of the murder and had shared a motel room with them. She testified on direct examination as to their actions that evening, without directly implicating them in the murder. She was cross-examined as to this testimony.
On re-direct, for the first time referring to the subject, the State asked this witness about a telephone conversation she had on the morning after the murder with Patricia Butler, the common-law wife of the defendant Kaufman. The State then asked:
"Do you deny that you told Patricia Butler that there were just two white honkys who got killed, and if it had been two colored people they would have forgotten about it? Do you deny that you told her that?" (The witness replied: "Yes, I do.")
The defendants immediately objected and moved for a mistrial on the ground that these references to race were highly prejudicial.[2] When the motion and *97 objection were overruled, the defendants reserved a bill of exceptions. Bill No. 21.
Patricia Butler was then called by the State as a witness. She admitted that she was the defendant Kaufman's common-law wife, that Kaufman did not spend the night of the murder at home with her, and that, on the following morning, he brought her a brown paper bag full of loose packages of cigarettes.[3]
The witness was then questioned as to a conversation she had that morning with Delores Williams (the previous witness, who had spent the night with Kaufman and Dotch). Over objection, she was asked to tell the subject of her conversation. When the witness Butler said that Delores Williams had "said something about honkys", the State immediately asked: "Well tell us what she said? What did she say about that?"
The defendants then objected and asked for a mistrial on the ground this testimony was inadmissible and highly prejudicial. Bill No. 27 was reserved when the objection was overruled.
The State then noted that the testimony was being introduced for the purpose of impeaching Delores Williams by showing prior inconsistent statements with regard to her denial that she (Williams) had mentioned the subject of "white honkys". The defense reiterated its objection and asked for a mistrial on the ground that the State was improperly attempting to get before the jury "inflammatory, prejudicial statements which should certainly support a mistrial." Bill No. 28.
The witness then replied, "She said something about the honkys." The State, after stating, "Well now you are going to have to answer my question,", then asked again, "What, if anything, did Delores tell you about white honkys?" Again, objection was made on the ground that such testimony was "needless hearsay" and "only calculated to prejudice and inflame the jury."
When the objection was overruled, Bill No. 29 was reserved, and the witness was required to answer: "She just kept saying the white honkys. She said something about the honkys, these two men that was killed."[4]
The defendants then once again moved for a mistrial at the conclusion of this witness's testimony on the ground that the State's inflammatory injection and prejudicial references to race were in violation of Article 770 of the Code of Criminal Procedure, see Footnote 1 above. Bill No. 31 was reserved as to the denial.
The final use of this testimony was in the prosecutor's closing argument. The prosecutor stated, referring to Delores Williams, "She denies that she told her [i. e., Patricia Butler] don't worry about these two white honkys". Immediate motion for a mistrial was made, based upon a "highly inflammatory statement based on race". When the motion was denied, Bill No. 43 was reserved.
The state injected the issue of the "white honkys" allegedly murdered by the black defendants during the re-direct examination of its own witness, Delores Williams. The alleged reason was to impeach her credibility.
A party's own witness may be impeached only by evidence of prior contradictory *98 statement. La.R.S. 15:487. The impeaching party must lay a foundation by asking the witness whether he has made the statement and the circumstances of such statement. La.R.S. 15:493.
In our initial opinion, we accepted the State's argument that the above was a proper and permissible procedure in accordance with the statutes cited. However, we overlooked the flat provision of La.R.S. 15:494: "It is not competent to impeach a witness as to collateral facts or irrelevant matter."
Whether or not the State's witness Delores Williams had ever mentioned anything about "white honkys" is completely collateral and utterly irrelevant to the innocence or guilt of the defendants for the murders with which charged or to any relevant issue in connection therewith.
The State, on oral argument before this court, attempted to justify its injection of the racial questions on the ground that it was attempting to show bias on the part of Delores Williams. We fail to perceive the validity of this justification.
We are cited no authority and to no theory of law which would permit admissibility of and questioning as to this irrelevant and highly prejudicial issue of "white honkys". The prosecutor repeatedly emphasized the use of this derogatory epithet by an associate of the black defendants with reference to the piteous innocent white victims of the crime, and this emphasis (without probative value as to the innocence or guilt of the defendants) could have only the effect of inflaming the white jury.
The defendants' motions for a mistrial should have been granted. We must reverse the convictions.
The purpose of this mandatory prohibition of our 1966 code is to avoid the use of racial prejudice to obtain convictions. This is in accord with our jurisprudence since our earliest days as an American jurisdiction. It is, of course, founded upon a stringent requirement that trials be conducted in accordance with law and that convictions be founded on evidence of guilt and not upon prejudice. Without this mandatory rule of law, the convictions of innocent defendants may be secured, not because of their guilt, but because of their race.
See: State v. Moore, 212 La. 943, 33 So. 2d 691 (1947) (conviction of black defendants reversed because of question by the prosecutor, "Then you struck him because he was a white man?"); State v. Bedford, 193 La. 104, 190 So. 347 (1939); State v. Brice, 163 La. 392, 111 So. 798 (1927); State v. Brown, 148 La. 357, 86 So. 912 (1921); State v. Jones, 127 La. 694, 53 So. 959 (1911); State v. Perry, 124 La. 931, 50 So. 799 (1909); State v. Bessa, 115 La. 259, 38 So. 985 (1905). See also Annotation, Counsel's appeal in criminal cases to racial, etc. prejudice, 45 ALR 2d 303, esp. at 344-50 (1956).

Erroneous instruction of jury venire

(Bill No. 4)
Over objection, four prospective jurors were asked by the prosecutor[5] to accept the following rule of law, which they did: "And the law has gone a step further[6] and said that if property is stolen during the commission of a homicide, the unexplained possession of property stolen in a homicide, the possessor unexplainedly is presumed to have committed the homicide." Bill No. 4 was reserved when the objection to this as an incorrect statement of law was overruled.
In our original opinion, we noted that La.R.S. 15:432 provides there is a presumption *99 "that the person in the unexplained possession of property recently stolen is the thief." We further noted that this statutory provision provides that "A legal presumption relieves him in whose favor it exists from the necessity of any proof."
Thus, under our law, the unexplained possession of property recently stolen may relieve the State of the necessity of further proof that the possessor stole it. If the jury convicts, there is some evidence of the theft which supports the verdict, and the verdict may not be set aside, upon appeal, on the ground that there was no evidence at all to prove the defendant guilty of the theft.
Under the State's theory, upon proof that the defendant was in possession of cigarettes similar to those stolen during the night of the murders, the State was likewise relieved of the burden of producing further proof that the defendants were guilty of killing the victims. (In fact, the State did of course produce further relevant evidence.) This theory is not supported by the law of Louisiana.
As we stated in our original opinion, "Unexplained possession of property recently stolen from the scene of a killing presents evidence that the killing could have occurred while the property was being taken during a burglary or robbery." (Emphasis supplied.) The introduction of stolen cigarettes was thus admissible as relevant evidencethat is, La.R.S. 15:441, "that tending to show the commission of the offense". (Italics ours.)
However, though the possession of stolen cigarettes may be relevant evidence that the possessor "could" have killed the victim in the location from which cigarettes were stolen, mere proof of the possession of stolen cigarettes does not, under Louisiana law, create a presumption that the possessor did murder the victim from whose premises cigarettes were stolen. Further proof is necessary.
The prospective jurors were thus erroneously instructed to accept law to the contrary.
The State relies upon Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896) as justifying the rule of law it advanced. In that case, the trial court's long and involved charge noted that a "foundation" for a presumption of guilt was created by the possession of blood-stained and other property definitely identified as belonging to the deceased. We do not view the broad language of the court in approving this charge as authority for creating a presumption, previously unknown to Louisiana law, arising from the unexplained possession of cigarettes similar to those stolen from the premises of the murdered victims, nor as authority that by reason of such presumption the State is relieved of the necessity of any proof that the possessor killed the victims.

Other Alleged Errors
We do not pass upon other prejudicial errors claimed, since upon the remand for retrial we are certain that the State's zeal to punish this brutal crime will not lead again to prosecutorial excess. We refer particularly to the great emphasis upon the conspiracy theory, in presumed reliance upon State v. Skinner, 251 La. 300, 204 So.2d 370 (1967), without necessarily establishing a prima facie case of conspiracy as required by La.R.S. 15:455.

Decree
For the reasons assigned, the convictions and sentences are reversed, and the case is remanded for a new trial.
Reversed and remanded.
SANDERS, C. J., dissents for the reasons assigned on original hearing.
SUMMERS, J., dissents. I adhere to the reasons assigned in our original opinion.
NOTES
[1] The penalty provision of the statute was omitted.
[1] If the State's theory is that it is admissible against the defendants as a declaration by a co-conspirator (pretermitting that the state has never described in opening statement or closing argument just what conspiracy is suspected and who formed part of it; and pretermitting the majority's refusal to consider the serious contentions of the defense that no prima facie case of conspiracy was ever proved), then such testimony is inadmissible as irrelevant and prejudicial.
[1] The full text of the mandatory provision of Article 770 in this regard is:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
"(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury; * * *
"An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. * * *" (Italics ours.)
[2] The defendants also objected to the question as nothing but cross-examination and impeachment by the State of its own witness, without laying a proper foundation that the witness was unwilling or hostile, or on the ground of surprise. La.R.S. 15:277, 15:487. This objection also appears to be well-founded.
[3] The witness also testified to a statement that the defendant Kaufman had made to her, which the co-defendant Dotch's counsel objected to as denying him the confrontation required by Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We do not pass upon this objection.
[4] We do not reach the contention that reversible error was committed because the trial court did not, as then required by state law, State v. Ray, 259 La. 105, 249 So.2d 540 (1971), expressly caution the jury that the testimony as to the "white honkys" was supposedly introduced, not for its truth, but just in connection with impeaching the credibility of Delores Williams, the State's witness.
[5] One of the jurors (Jeffers) served a petit juror for the trial. The other three were excused by peremptory challenges of the defendants.
[6] The prosecutor had first asked these prospective jurors to accept the presumption that one in unexplained possession of stolen things is presumed to be a thief. La.R.S. 15:432.