573 So.2d 604 (1991)
STATE of Louisiana, Appellee,
v.
Mark Stephen KING, Appellant.
No. 22196-KA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1991.
Rabun and McCallum by Jay B. McCallum, Farmerville, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, T.J. Adkins, Dist. Atty., John L. Sheehan, Asst. Dist. Atty., Ruston, for appellee.
Before MARVIN, FRED W. JONES, Jr. and SEXTON, JJ.
SEXTON, Judge.
Defendant, Mark Stephen King, charged by indictment with the second degree murder of Archard Ray "Tiger" Harrison, was found guilty as charged by a jury. The district court subsequently sentenced the defendant to the statutorily mandated sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
The defendant appeals, assigning as error the trial court's failure to order a mistrial based upon the prosecutor's reference to the victim's race in his opening statement and the trial court's allowance of the introduction into evidence of inculpatory statements he made shortly after the murder. Finding no merit to either argument, *605 we affirm the defendant's conviction and sentence.
On the evening of July 11, 1989, several individuals had gathered at one of the individual's mobile home in Clark's Trailer Park near Grambling, Louisiana, in Lincoln Parish. They were visiting, eating, and drinking beer or other alcoholic beverages. An argument developed outside of the trailer between the victim and the defendant supposedly over the defendant's girlfriend, with whom the defendant lived in the trailer park.
The defendant left and returned to his trailer. He came back out and exchanged additional words with Harrison. The defendant then went back inside the trailer again and returned once again, this time with a .22 caliber handgun, at which time he fired three shots at the victim, at least one of which caused his death.
Law enforcement officers arrived shortly after the shooting and defendant spoke with them, acknowledging that he had shot the victim. The defendant was transported to a local hospital for treatment for injuries he received in a scuffle which arose after, and probably as a result of, the shooting. At the hospital, he again spoke with law enforcement officers and again acknowledged that he had shot the victim.
In his first assignment of error, defendant argues that the trial court erred when it failed to order a mistrial based upon the district attorney's reference to the race of the victim in his opening statement.
In the state's opening statement, the district attorney remarked, "[W]e will show that ... Mark Stephen King who lived there at the trailer park shot and killed Archie Harrison who was a young black male approximately eighteen years of age." Defense counsel moved for a mistrial arguing that the remark constituted a prohibited reference to the race of the victim, thereby mandating a mistrial under LSA-C.Cr.P. Art. 770. After a brief recess, the trial court denied the motion on the grounds that the remark did not result in prejudice against the defendant in the mind of the jury.
LSA-C.Cr.P. Art. 770 provides, in pertinent part:
Art. 770. Prejudicial remarks; basis of mistrial
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury; ...
Although the district attorney referred to race in his opening statement, not every reference to race requires the granting of a mistrial. State v. Jenkins, 340 So.2d 157 (La.1976). For example, race may be a valid method of identification and, thus, material and relevant. State v. Greene, 542 So.2d 156 (La.App. 1st Cir.1989).
Thus, as provided by Art. 770, the remark or comment in question must satisfy two requirements to mandate a mistrial. First, the remark or comment must be immaterial and irrelevant and, second, it must be such that it might create prejudice against the defendant in the mind of the jury.
In State v. Thomas, 310 So.2d 517 (La. 1975), the court determined that a remark of the district attorney incidentally referring to the race of the defendants was not of a nature to create prejudice against them such as would require a mistrial under LSA-C.Cr.P. Art. 770. Also, in State v. Jackson, 301 So.2d 598 (La.1974), the supreme court held that a mention in the opening statement that the defendant and three other black males had entered the victim's apartment was a factual explanation of the circumstances of the crime which did not, in the context used, appeal to racial prejudice and was not a remark prohibited by LSA-C.Cr.P. Art. 770.
Similarly, in the instant case, when the entire record is considered, it is obvious that there was no attempt by the district attorney to pursue a racial issue to prejudice *606 the defendant. Although the remark in question might be considered immaterial or irrelevant, it did not act to create the prejudice contemplated by LSA-C.Cr.P. Art. 770. Consequently, the district attorney's remark was not the type proscribed by the article. This assignment of error therefore lacks merit.
In his other assignment of error, the defendant argues that the district court erred in permitting the introduction into evidence of inculpatory statements which he made shortly after the shooting.
Prior to trial, the defendant filed a motion to suppress two inculpatory statements that he made which the state intended to use at trial. The defendant alleged the statements were involuntarily made due to his highly intoxicated state, physical injuries, and concern for his safety and welfare.
At the hearing on the motion to suppress it was stipulated that the defendant's blood alcohol level was .359. Two police officers testified as to the defendant's knowing and intelligent waiver of his constitutional rights at the time of his statements.
Officer Greg McNeal testified that he arrived on the scene and found the defendant in the patrol car of another officer who was already on the scene. The officer testified that he read the Miranda rights to defendant and, although the defendant had been drinking, he acknowledged his understanding of his rights. The officer further testified that the defendant not only understood and acknowledged such understanding, but that he repeated the rights back to the officer from memory. The defendant then admitted to shooting the victim.
The defendant also contends that due to his concern for his physical condition and well-being, he was incapable of making a knowing and intelligent waiver of his constitutional rights at the time of his arrest. Following the shooting, the defendant was apparently involved in a brawl and sustained injuries. When Officer McNeal arrived on the scene, the defendant had been safely placed in the back of a patrol unit. There was no evidence to indicate any element of police coercion before the statement was made. Officer McNeal testified that the defendant wanted to continue to discuss the incident with him but that the officer broke off the discussion because of his concern about the crowd. However, there is no indication that the officers were not in control of the scene.
The defendant was transported to Lincoln General Hospital where, following a medical examination, Officer McNeal again advised defendant of his Miranda rights. Additionally, Officer Joey Davidson of the Lincoln Parish Sheriff's Department also advised the defendant of his Miranda rights and asked if he then wished to make a statement. The defendant responded, "I'm gonna tell you just exactly what happened," and admitted to shooting the victim and throwing the gun behind his trailer.
Both officers testified that, although the defendant had been drinking, he was aware of his surroundings and responded cogently to the inquiries of the officers and the hospital personnel. Indeed, Officer McNeal testified that when he introduced himself to the defendant earlier at the scene, the defendant reported that he did not know Officer McNeal but that he had heard of him. Further, Deputy Davidson testified that the defendant related his version of the shooting in some detail.
Before a confession may be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Where the free and voluntary nature of a confession is challenged on the ground that the defendant was intoxicated at the time of interrogation, the confession will be rendered inadmissible only when the intoxication is of such a degree as to negate defendant's comprehension and to render him unconscious of the consequences of what he is saying. Whether intoxication *607 exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact. The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of the testimony relating to the voluntariness of a confession will not be overturned unless they are not supported by the evidence. State v. Robinson, 384 So.2d 332 (La.1980); State v. Rankin, 357 So.2d 803 (La.1978).
While the defendant's stipulated blood alcohol level of .359 appears significant, the record reflects that the defendant was coherent and understood the consequences of his statement. The testimony of the officers which the trial court obviously credited indicates that the defendant was aware of his surroundings and consistently responded appropriately to those with whom he came in contact. In short, the testimony of the officers negates any claim of intoxication sufficient to vitiate the voluntariness of the statements at issue. The trial court's determination of admissibility is supported by the evidence and will not be disturbed by us. State v. Smith, 407 So.2d 652 (La.1981); State v. Loyd, 455 So.2d 687 (La.App. 2d Cir.1984), writ denied, 461 So.2d 313 (La.1984). The record also supports the trial court's rejection of the defendant's contention that his stressful state and the charged atmosphere precluded him from making free and voluntary statements.
Additionally, we note that the evidence in the record would have been more than sufficient to support defendant's conviction, even without any evidence of defendant's inculpatory statements. There were numerous witnesses to the shooting and there was no doubt whatsoever, much less any reasonable doubt, that defendant intended to kill the victim and did so. This assignment of error is without merit.
For the above and foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.