974 So.2d 793 (2008)
STATE of Louisiana, Appellee,
v.
Andrew L. DIXON, Appellant.
No. 42,594-KA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 2008.
W. Jarred Franklin, Louisiana Appellate Project, for Appellant.
Jerry L. Jones, District Attorney, Stephen T. Sylvester, Assistant District Attorney, for Appellee.
Before BROWN, WILLIAMS, and LOLLEY, JJ.
BROWN, Chief Judge.
ln this capital murder case, the jury convicted defendant, Andrew L. Dixon, of the first degree murder of John Galloway.[1] Following a penalty trial, the jury chose a life sentence without benefit of parole, probation, or suspension which was thereafter imposed by the trial court. Defendant has appealed his conviction and sentence. For the reasons set forth below, defendant's conviction and sentence are affirmed.

Facts
Each Friday several employees of Kitchen Brothers of Monroe entrusted John Galloway to cash their paychecks at Regions Bank and to bring the money back to them at Kitchen Brothers. After cashing the checks on Friday, December 19, 2003, John Galloway and his father, Butler Galloway, were returning to Kitchen Brothers on Mississippi Street when their way was blocked by defendant and Lamonte "Kilo" Smiley lying in the road. When John Galloway stopped his truck, defendant got up and ran to the driver's side while Smiley ran to the passenger side of the truck. Defendant shot 64-year-old John Galloway four times in the face, shoulder, and chest with a nine millimeter semiautomatic pistol. After being shot, John Galloway rapidly accelerated his truck into a 10-wheel dump truck in the opposite lane of traffic. After the collision, defendant ran to the truck and removed the bag containing the money from the cashed paychecks. John Galloway died from the gunshot wounds. Butler Galloway, who was 89 years old, died as a result of injuries sustained in the collision.

Discussion
Sufficiency of the Evidence
Defendant argues on appeal that the state failed to prove that he was involved in this robbery and murder. The state's answer to defendant's application for bill of particulars indicates that it was alleging that defendant fired multiple gunshots into John Galloway while perpetrating an armed robbery. Further, the trial court instructed the jury on the charge of first degree murder in regards to it occurring during the perpetration or attempted perpetration of an armed robbery. Therefore, in order to convict defendant of first degree murder, the state was required to prove beyond a reasonable doubt that the defendant specifically intended to kill or to inflict great bodily harm on the victim during the perpetration or attempted perpetration of an armed robbery. La. R.S. 14:30(A)(1). Armed robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by *797 use of force or intimidation, while armed with a dangerous weapon." La. R.S. 14:64.[2]
Due process requires that an offender be convicted only upon proof of guilt beyond a reasonable doubt. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This Jackson v. Virginia standard is now legislatively embodied in La. C. Cr. P. art. 821.
Through the eyewitness testimony of Tiffany Anderson, Lakisha Pimpleton, Robert Weaks, Charles Donaldson, and Latoya Donaldson, the state presented sufficient evidence from which a reasonable jury could determine that two men laid down in the middle of Mississippi Street, that those two men jumped up when John Galloway's pickup truck stopped in front of them, that a man dressed in black pants, black jacket, and red cap ran to the driver's side of the pickup truck, fired several rounds from a handgun into the truck, and grabbed a bag out of the pickup truck after it crashed into the dump truck. Through the testimony of Dr. Frank Peretti, the state proved that John Galloway died as a result of gunshot wounds. Accordingly, the state presented sufficient evidence from which a reasonable jury could determine that the crime of first degree murder was proven.
The issue in this case is not whether the crime was committed, but the identity of the perpetrator. Quintina Henry testified that she heard a gunshot when she got off the school bus, and she ran to the corner to see what was happening. Quintina, who was 13 years old at the time of the offense and 16 years old at the time of trial, testified that she saw a truck swerve and hit a big truck. She then saw a man open the driver's side door of the truck and grab a bag. This man then ran through her friend's backyard very close to where she was standing. Quintina testified that she saw the man carrying a bag and a silver gun. The man ran through the abandoned houses, and the witness ran to her home nearby and reported what she had seen to her mother. Quintina testified that the man was wearing all black with a red hat. Two weeks later, she picked defendant out of a photographic lineup as the man she saw that day. At trial, Quintina also identified defendant as the man she had seen that-day.
Edward Green testified that he knew there was going to be a robbery of the truck carrying the money from the cashed paychecks, that he gave defendant a ride to and from a place close to the crime scene, that defendant was wearing a black zippered jacket, black pants, and a burgundy-reddish skullcap, and that defendant had a blue money bag containing more than $20,000 after the robbery. Derrica Green testified that defendant was wearing a black zippered sweater, black pants, and a burgundy-reddish skullcap on the day of the murder, that he confessed to her that he shot the driver in the face or chest during the robbery, and that defendant told her the man he shot may have died.
Defendant questions the credibility of both Edward and Derrica Green. *798 Both prosecutor and defense counsel made it clear to the jury that Edward Green and Derrica Green were facing criminal charges in relation to the robbery and murder and that neither had received any "deals" in exchange for testimony. Louisiana law allows an accomplice to testify against a co-perpetrator even if the state offers inducements to testify. Such inducements are a fact in evaluating the witness's credibility. State v. Hughes, 05-0992 (La.11/29/06), 943 So.2d 1047, cert. denied, ___ U.S. ___, 127 S.Ct. 2065, 167 L.Ed.2d 789 (2007); State v. Neal, 00-0674 (La.06/29/01), 796 So.2d 649, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). A conviction may be sustained by the uncorroborated testimony of an accomplice, although the jury should be instructed to treat the testimony with caution. State v. Hughes, supra, State v. Tate, 01-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004).
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight, not the sufficiency, of the evidence. State v. Allen, 36,180 (La.App. 2d Cir.09/18/02), 828 So.2d 622, writs denied, 02-2595 (La.03/28/03), 840 So.2d 566, 02-2997 (La.06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the present case, the testimony of Edward Green and Derrica Green was materially corroborated by the eyewitness testimony, and any issues that may
The evidence clearly supports the jury's finding of guilty beyond a reasonable doubt.
Denial of Motion to Quash Indictment
Defendant filed a motion to quash the bill of indictment, wherein he alleged that the indictment was constitutionally invalid because it did not give notice as to the facts found by the grand jury that gave rise to the charge of first degree murder[3] and that the aggravating facts and circumstances required for conviction and a capital penalty must be alleged in the indictment. Defendant's argument relied upon U.S. Supreme Court rulings.
In State v. Draughn, 05-1825 (La.01/17/07), 950 So.2d 583, cert. denied, ___ U.S. ___, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007), the Louisiana Supreme Court recently reviewed the issue of whether the short-form indictment was constitutionally deficient for failure to list the aggravating factors necessary to a first degree murder crime or the aggravating circumstances necessary to impose a death sentence. The court stated:
La. C. Cr. P. art. 465 authorizes the use of specific short form indictments in charging certain offenses, including first degree murder. The constitutionality of short forms has been consistently upheld by this Court. State v. Baylis, 388 So.2d 713, 718-19 (La.1980); State v. Liner, 373 So.2d 121, 122 (La.1979). When those forms are used, it is intended that a defendant may procure details as to the statutory method by which he committed the offense through a bill of particulars. [State v.] Baylis, 388 So.2d at 719; State v. Johnson, 365 So.2d *799 1267, 1270-71 (La.1978); La C. Cr. P. art. 465, Official Revision Comment (a). . . .
Accordingly, the defendant was charged in compliance with La. C. Cr. P. art. 465(A)(31), which provides as a short form indictment for first degree murder: "A.B. committed first degree murder of C.D." See [State v.] Manning, 03-1982H p. 49, (La.10/19/04),] 885 So.2d [1044,] 1090, cert. denied, 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (1005).
Id, 950 So.2d at 624.
Even so, the court did not address the short-form indictment issue in the context of the United States Supreme Court ruling that defendant raises in the present case. In Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the defendant was charged under the federal carjacking statute, 18 U.S.C. § 2119, which carried three separate penalty provisions depending upon whether the victim suffered great bodily injury or death. The indictment did not allege whether the victim suffered great bodily injury or death. After the jury convicted defendant, the trial court imposed a sentence of 25 years because the presentence report stated that one of the victims suffered serious bodily injury. The Court found that "Congress probably intended serious bodily injury to be an element defining an aggravated form of the crime" because that fact increased the maximum penalty for the offense of carjacking from 15 years to 25 years. Id., 526 U.S. 232-239, 119 S.Ct. at 1219-1222. Ultimately, the Court held that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any. fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Id., 526 U.S. at 243, 119 S.Ct. at 1224, fn. 6.[4]
The following year, in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Court considered a similar case wherein the defendant pled guilty to a state offense with a sentencing range of 5 to 10 years, but the trial court imposed a 12-year sentence pursuant to a hate crime statute that allows a sentence to be enhanced if the trial judge finds by a preponderance of the evidence that the crime was motivated by racial bias. The Court concluded that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id., 530 U.S. at 490, 120 S.Ct. at 2362-2363. The Court in Apprendi, however, expressly refused to make any ruling as to whether such additional elements must be alleged in indictments in state criminal prosecutions.
Two years later in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the Court found that the Arizona statutory process for allowing a trial judge to determine whether aggravating factors exist in order to impose the death penalty upon a defendant convicted of first degree murder violated the Sixth Amendment right to a jury trial. Under the death penalty statutes in Arizona at the time, the maximum sentence for a capital offense was life imprisonment unless the trial court found the existence of a statutory aggravating factor, which then authorized the trial court to impose the death penalty. *800 The Court considered its prior holdings in Jones v. United States, supra, and Apprendi v. New Jersey, supra, to find that Arizona's enumerated aggravating factors for imposing the death penalty operated as " the functional equivalent of an element of a greater offense,'" which must be found by a jury. Id., 536 U.S. at 609, 122 S.Ct. at 2443, quoting Apprendi, 530 U.S. at 494, 120 S.Ct. 2348, n. 19. However, the Court in Ring expressly refused to consider whether the defendant's indictment was invalid, noting that:
Finally, Ring does not contend that his indictment was constitutionally defective. See Apprendi, 530 U.S., at 477, n. 3, 120 S.Ct. 2348, 147 L.Ed.2d 435 (Fourteenth Amendment "has not been construed to include the Fifth Amendment right to `presentment or indictment of a Grand Jury'").
Ring v. Arizona, 536 U.S. at 597, 122 S.Ct. at 2437, n. 4.
Accordingly, while the United States Supreme Court stated that the Due Process Clause of the Fifth Amendment requires all the elements of an offense be alleged in the indictment for federal criminal prosecutions, the Fourteenth Amendment has not been construed to extend that same indictment requirement to the states.
Defendant also argues that the short-form indictment for first degree murder violates the Louisiana Constitution's requirement that "no person shall be held to answer for a capital crime or a crime punishable by life imprisonment except on indictment by a grand jury."[5]
The fact that the short-form indictment was used does not diminish the grand jury's role in the indictment process, and, as noted by the Louisiana Supreme Court in State v. Draughn, supra, the process for filing an application for bill of particulars gives the defendant additional notice of the charge against which he must defend.
In the present case, the indictment complied with the short form of Article, 465(A)(31), and the state completely responded to defendant's application for bill of particulars. There is no state or federal precedent requiring Louisiana indictments to allege the aggravating facts which are required for first degree murder or to allege the aggravating circumstances to be considered at the penalty phase of trial. To the contrary, the short-form indictment has been upheld in regard to the Louisiana Constitution. We note, that alleging such aggravating factors in the indictment, which would be read to the jury before trial, could prove prejudicial to defendant.
Admissibility of Other Crimes Evidence
During cross-examination of Monroe. Police Detective Quentin Holmes by defendant's attorney, the following exchange took place:
MR. SCOTT: As part of your investigation did you develop any information about a Joseph Kemp?
DET. HOLMES: Yes. I did.
MR. SCOTT: And what information did you develop in regard to Joseph Kemp in connection with this offense?
DET. HOLMES: That he was a drug user and Andrew Dixon and he sold and used drugs together.
According to La. C. Cr. P. art. 404(B), evidence of other crimes is inadmissible for the purpose of proving that the defendant acted in conformity with a bad character, but it may be admitted if relevant to a material purpose. If the state seeks to present such evidence, it must comply with the requirements of Article *801 404(B) and State v. Prieur, 277 So.2d 126 (La.1973), and provide notice to the defendant so that the trial court may conduct a hearing to determine if the evidence is truly admissible. When evidence of other crimes is improperly admitted at trial, it is subject to harmless error review and will be deemed harmless if the verdict is "surely unattributable to the error." State v. Parker, 42,311 (La.App.2d Cir.08/15/07), 963 So.2d 497.
Upon motion of the defendant, a mistrial shall be ordered when prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to obtain a fair trial or when authorized by La. C. Cr. P. arts. 770, 771, or 775. La. C. Cr. P. art. 770(2) provides that a mistrial shall be granted upon motion of the defendant when a remark or comment is made within the hearing of the jury by the judge, district attorney, or a court official during trial or in argument and that remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. State v. Ellis, 42,520 (La.App.2d Cir.09/26/07), 966 So.2d 139. A law enforcement officer is not considered a "court official," and an unsolicited, unresponsive reference to other crimes evidence made by a law enforcement officer is not grounds for a mandatory mistrial under La. C. Cr. P. art. 770. State v. Scott, 34,949 (La.App2d Cir.01/25/02), 823 So.2d 960, writ denied, 02-1622 (La.05/16/03), 843 So.2d 1122.
Article 771 sets out permissive grounds for requesting an admonition or a mistrial when a prejudicial remark is made under grounds that do not require an automatic mistrial under Article 770. Article 775 also sets forth additional permissive grounds for mistrial, which include, that "fuipon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771." Defendant did not request an admonition in the present case.
Even so, the trial court had the discretion under Articles 771 and 775 to grant a mistrial in the present case if it viewed the statement of Detective Holmes to be so prejudicial, that it made it impossible for defendant to have a fair trial.
Detective Holmes' statement about defendant and Joseph Kemp using and selling drugs was elicited by defense counsel and not by the district attorney. The purpose of the question is unclear. On one hand, this information could have been something Detective Holmes learned' about defendant during the course of the investigation, which had nothing to do with the first degree murder case; on the other hand, defendant's drug activity could have been the `motive for committing the robbery. Because the statement was made following a specific question regarding information gathered about Joseph Kemp during the investigation, the statement does not appear to have been purposely uttered to prejudice defendant. Further, because it was an ambiguous reference to drug activity without any further explanation or elaboration and because there was overwhelming evidence that defendant was guilty of the first degree murder of John Galloway, the statement does not appear to have been any more prejudicial than the clearly admissible evidence or to have deprived him of a fair trial. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for mistrial.
Denial of Motion to Suppress Identification
Defendant next argues that the trial court erred in denying his motion to suppress *802 the in-court identification by Quintina Henry because her attention was unduly focused on him when he was asked to remove his glasses.
When Quintina was first asked if she could identify the person she saw that day inside the courtroom, she said nothing. The prosecutor then asked if the person she saw that day wore glasses, and she said no. The prosecutor then asked Quintina if she remembered identifying someone in the photographic line-up as the person she saw that day, and she said yes. The state then introduced the photographic line-up, which showed that Quintina had identified defendant as the person she saw that day and that she made the identification two weeks after the offense. Detective Holmes testified that earlier he had shown Quintina a photographic line-up which did not contain defendant's photograph and that she did not identify anyone as the perpetrator.
Outside the presence of the jury, the prosecutor requested that defendant remove the glasses he was wearing during Quintina's testimony. Defense counsel objected that this was "suggestive identification." Defense counsel cross-examined Quintina, who testified that she remembered defendant's face when he was asked to remove his glasses. She testified that she had not seen defendant's face on television prior to coming to court to testify. On re-direct examination, Quintina testified that the picture of the person she identified from the photographic line-up was the same person she saw on the day of the offense and that the person in the picture was not wearing glasses at the time of the offense.
The likelihood of misidentification violates due process when the totality of the circumstances indicates that misidentification probably occurred. State v. Brown, 40,769 (La.App.2d Cir.03/08/06), 923 So.2d 976, citing Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). For an in-court identification to be suppressed due to an allegedly suggestive identification procedure, there must be a substantial likelihood of misidentification in addition to, the suggestive identification procedure. Id. When assessing the reliability of an identification, the following factors must be considered: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. State v. Kemp, 39,358 (La.App.2d Cir.03/11/05), 896 So.2d 349, 356, writ denied, 05-0937 (La.12/09/05), 916 So.2d 1052, citing Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243; 53 L.Ed.2d 140 (1977). Further, evidence of the witness's pre-trial identification of the defendant enhances the credibility of that witness's incourt identification. State v. Tilmon, 38,003 (La.App.2d Cir.04/14/04), 870 So.2d 607, writ denied, 04-2011 (La.12/17/04), 888 So.2d 866.
Asking defendant to remove his glasses in front of the witness, who was just asked whether she saw the perpetrator in the courtroom, undoubtedly drew her attention to defendant. Quintina's testimony indicates that she had a clear view of defendant at the time of the crime. Detective Holmes testified that Quintina did not pick anyone out of the first photographic line-up, which did not contain a picture of defendant, but when he showed Quintina the second photographic line-up two weeks after the offense, she followed his instructions carefully, looked at each picture twice, and identified defendant's picture as showing the person she saw that day. Because there was no substantial *803 chance of misidentification, the trial court did not err in denying the defendant's motion to suppress Quintina's incourt identification.
Denial of Mistrial Motion
During the state's closing argument, the prosecutor made the following statements in regard to the testimony of Edward Green:
BY MR. SYLVESTER: But when he testified Mr. Green had more to say. Mr. Green said first of allI don't know how old Mr. Green is. But you all saw him. He's a young black man. Young black men can tend to be very volatile. Y'all heard Mr. Perkins (defense counsel) who is a white man
BY MR. PERKINS: Mistrial.
BY MR. SYLVESTER: And what Mr. Perkins
BY THE COURT: One moment. Go ahead.
BY MR. SYLVESTER: Did you say go ahead, judge?
BY THE COURT: Yes, sir.
BY MR. SYLVESTER: What Mr. Perkins did
BY MR. PERKINS: Note our objection, Your Honor.
BY THE COURT: It's noted.
BY MR. SYLVESTER:was stand right there and call him a liar. He didn't call him a liar one time. He didn't call him a liar two times. He consistently called him a liar. Which would probably generally set somebody like that off. What did he do? He couldn't be intimidated. He was here to tell y'all something. He was here to tell y'all what happened. He was here to tell you all what part he played in it. . . .
Defendant, who was a young, black man, argues that the trial court erred in denying his motion for mistrial based upon the prosecutor's racial remarks. Defendant contends that he was entitled to an automatic mistrial pursuant to La. C. Cr. P. art. 770(1) based upon the general statement that all young, black men are volatile, angry people subject to committing violent acts based upon mere words.
La. C. Cr. P. art. 770(1) provides that a mistrial shall be granted upon motion of the defendant when a remark or comment is made within the hearing of the jury by the judge, district attorney, or a court official during trial or in argument and that remark refers to directly or indirectly to "[r]ace, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury." As noted by the Louisiana Supreme Court in State v. Wilson, 404 So.2d 968, 970 (La.I981):
When the alleged criminal conduct arises out of an incident among persons filled with racial animosity our system of criminal justice requires that those charged with the responsibility for the conduct of criminal trials strictly avoid any actions which might influence the jury to decide the guilt or innocence of the accused upon prejudice rather than on the law and the evidence. We set forth our views at length in State v. Jones, [283 So.2d 476 (La.1973)], wherein we stated that racial remarks are not permissible if they appeal to racial prejudice and are not relevant either to prove the elements of the crime or to explain a relevant fact.
Even so, not every reference to race requires the granting of a mistrial. State v. King, 573 So.2d 604 (La.App. 2d Cir.1991), citing State v. Jenkins, 340 So.2d 157 (La.1976). To require a mistrial the remark must be immaterial and irrelevant and must be such that it might *804 create prejudice against the defendant in the mind of the jury.
In the present case, the prosecutor, who was also black, made a general comment in the closing argument that the witness, who had participated in this crime and was testifying for the state, was young, black, and could be volatile when aggressively cross-examined by a white defense attorney. During cross-examination, the defense attorney repeatedly called the witness a liar. The prosecutor's references to the race of the witness were unnecessary and a poor choice of words; however, the reference to race was to support the witness's believability and was not an appeal to racial prejudice.
The present case does not involve a crime arising out of racial conflict nor did the prosecutor appeal for racial prejudice against the defendant. Thus, the facts in the case sub judice are distinguishable from the facts in State v. Wilson, supra. Accordingly, the trial court properly denied defendant's motion for mistrial because it did not satisfy the requirements of La. C. Cr. P. art. 770(1). This assignment is therefore without merit.
Excessive Sentence
Defendant argues that the trial court should have made a downward departure from the mandatory life sentence required by La. R.S. 14:30. In State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672, the Louisiana Supreme Court explained the circumstances in which a downward departure from the mandatory minimum habitual offender sentence is warranted, finding that it is rare and only warranted under exceptional circumstances. In those cases, the sentencing judge must begin with the presumption that the mandatory minimum sentence is constitutional. State v. Johnson, 709 So.2d at 676, citing State v. Dorthey, 623 So.2d 1276, 1280 (La.1993); State v. Young, 94-16:36 (La.App. 4th Cir.10/26/95), 663 So.2d 525, writ denied, 95-3010 (La.03/22/96), 669 So.2d 1223. The court may only depart from the minimum sentence if it finds that the defendant presented "clear and convincing evidence" to rebut that presumption of constitutionality, which requires a showing that "`[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.'" State v. Johnson, 709 So.2d at 676, quoting State v. Young, 663 So.2d at 528.
At the penalty phase of trial, defendant presented witnesses who testified that his parents had divorced, that his parents had substance abuse problems, that he had a substance abuse problem, that he dropped out of school, that he was affected by the violent death of his best friend, and that imposing the death penalty on defendant would devastate defendant's family.
The trial court noted at the sentencing hearing that defendant had killed two people and that he was convinced that defendant had also committed a similar crime in Texas, that there were no mitigating circumstances, and that it believed the jury did not impose a death sentence because it was swayed by sympathy and respect for human life. We agree.

Conclusion
For the foregoing reasons, defendant's conviction and sentence are affirmed.
NOTES
[1] Initially defendant was indicted for two counts of second degree murder, then an indictment was issued for the first degree murder of John and Butler Galloway. A superceding indictment was thereafter filed charging the first degree murder of John Galloway.
[2] Contrary to defendant's assertion, it is irrelevant whether the state proved that defendant intended to kill two or more people or a person over the age of 65 because defendant was not charged with first degree murder due to killing two or more people or a person over the age of 65.
[3] Defendant also alleged that the system of law in Louisiana was constitutionally defective because it allowed a grand jury to return an indictment on less than a unanimous vote have affected their credibility were properly considered by the jury. and that it was discriminatory for La. R.S. 14:30 to provide special consideration for victims under the age of 12 or over the age of 65.
[4] The Court notes that a reason for exempting prior convictions from this requirement is "a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." Jones v. United States, 526 U.S. at 249, 119 S.Ct. at 1227.
[5] This is taken from a statement by Justice Calogero in his dissent in State v. Liner, supra.