404 So.2d 968 (1981)
STATE of Louisiana
v.
Joseph WILSON, Jr. and Henry A. Moses.
No. 80-KA-2879.
Supreme Court of Louisiana.
September 28, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Manoulides, Dist. Atty., Patrick Leitz, Kerry Hogan, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
William Noland, Lawrence J. Boasso, Robert Garrity, Indigent Defender Board, New Orleans, for defendant-appellant.
WATKINS, Justice Ad Hoc.[*]
This is an appeal from a conviction of Joseph Wilson, Jr., and Henry A. Moses of *969 first degree murder in the shooting death of Henry Ball, III. Wilson and Moses were sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence upon the jury's recommendation. The jury was all white. Wilson and Moses are blacks, and the victim, Ball, was white.
Three principal assignments of error are urged by defendants' counsel on appeal. Because we find one assignment to be correct, we set aside the conviction and sentence on the basis of that ground, without it being necessary for us to consider the other assignments of error raised.
The incident, which had obvious racial overtones, took place on Sunday, September 17, 1978, at the Oakwood Shopping Center, Gretna, Louisiana. The victim, Ball, and approximately eighteen other white males had gathered in the Oakwood Shopping Center parking lot. Most of these individuals belonged to a group known as the King of Kegs. The group was drinking beer and generally conversing among themselves. The defendants, Wilson and Moses, were also in the parking lot when a confrontation took place between them and the group of white males, in the course of which the defendants pulled out their guns and fired several shots. One of the bullets struck Ball, fatally wounding him. Immediately thereafter, some of the whites in the group severely beat one defendant, Moses, and ran over the other defendant, Wilson, with a van, for the ostensible purposes of self-defense, or arrest, or both.
Defendants contend that remarks made to the jury in the assistant district attorney's closing argument and rebuttal had the obvious effect of arousing racial prejudice among members of the jury, which was all white, and were totally irrelevant to the crime of murder which was allegedly committed. We find the assistant district attorney's statements out of place, irrelevant to the proceedings, and of a clearly inflammatory racial nature.
The closing argument of the assistant district attorney is filled with direct and indirect appeals to the racial prejudices of the all white jury. We quote the first remark, and the objections of counsel, motion for mistrial, and the manner in which the assistant district attorney continued:
(MR. LIETZ, ASSISTANT DISTRICT ATTORNEY)
"Why is it a black Sunday? Because these two animals decided to shoot white honkies.
MR. PARENT:
Objection, Your Honor.
MR. TOOLEY:
May it please the Court, this is gross. I ask for a mistrial.
THE COURT:
I deny your motion.
The jury will disregard that statement.
MR. PARENT:
Note our objection, Your Honor.
MR. LIETZ:
They were going to shoot white honkies. They were going to shoot them. There is no question in their mind what they had to do.
You saw the pictures. You saw the keys in the car. You saw where the car was parked, way away from everything. That was the getaway car. They were going to go shoot white honkey. What did they mean? They meant business."
The assistant district attorney then went on to say:
"Ladies and gentlemen, both of these men were in this together. They left Oakwood Shopping Center, armed themselves and came back to shoot whitey, to kill whitey, and that's exactly what they did.
* * * * * *
These gentlemen had the opportunity to leave at any time, at any time. Nobody forced them into that shopping center with guns to kill whitey."
Counsel for defendants did not object to these latter remarks at that time or move for a mistrial.
After closing arguments of defense counsel, the assistant district attorney, in rebuttal, made further racial remarks, which we quote, together with counsel's objections, and motion for a mistrial.

*970 "Ladies and Gentlemen, yes, they said I am fostering racial prejudice. Ladies and Gentlemen, they started yesterday on voir dire about prejudice. They took the stand and said niggers. I didn't say niggers. I didn't start this off. Ladies and Gentlemen I don't care if they are black, white, green. They are murderers. These witnesses they said, Mouse said these two fellows said Mouse said, `Let's get the Niggers.' How come none of the other boys heard that. Mr. Tooley says Moses is innocent. He shot in the air. Ladies and gentlemen, do you think these two black males or any kind of males, these two animals over here
MR. TOOLEY:
Objection, Your Honor.
MR. PARENT:
Objection, Your Honor.
MR. TOOLEY:
I ask for a mistrial.
THE COURT:
It's not necessary to use these kinds of terms.
The jury will disregard it."
Under Louisiana law, a mistrial is mandatory when a prosecutor refers "directly or indirectly" to race or color, where "the remark or comment is not material and not relevant and might create prejudice against the defendant in the mind of the jury." LSA-C.Cr.P. art. 770(1)[1]; State v. Kaufman, 278 So.2d 86, 96 (La.1973).
In Kaufman, supra, this Court stated:
"The purpose of this mandatory prohibition of our 1966 code is to avoid the use of racial prejudice to obtain convictions. This is in accord with our jurisprudence since our earliest days as an American jurisdiction. It is, of course, founded upon a stringent requirement that trials be conducted in accordance with law and that convictions be founded on evidence of guilt and not upon prejudice. Without this mandatory rule of law, the convictions of innocent defendants may be secured, not because of their guilt, but because of their race." (278 So.2d at 98)
This article of the Code of Criminal Procedure has been applied in numerous decisions of this Court. See, e. g., State v. Jones, 283 So.2d 476 (La.1973); State v. Snedecor, 294 So.2d 207 (La.1974). This article is not a development in our law but rather is a codification of a long standing rule traditionally recognized by us. See State v. Brown, 148 La. 357, 86 So. 912 (1921); State v. Moore, 212 La. 943, 33 So.2d 691 (1947). See also discussion and cases cited in State v. Kaufman (on rehearing), supra.
It is true that defense counsel did not object and move for a mistrial on each occasion when the assistant district attorney made remarks appealing to racial prejudice in his closing remarks. However, it is apparent from a reading of Louisiana jurisprudence (see cases cited above) that race is such a sensitive matter that a single appeal to racial prejudice furnishes grounds for a mistrial, and that a mere admonition to the jury to disregard the remark is insufficient. See especially State v. Moore, supra. Thus, it was unnecessary for defense counsel to move for a mistrial on each occasion when a racial remark was made. Such repeated objection to improper closing remarks is not expected of defense counsel, particularly as the effect of such repeated objection in the presence of the jury might be to call the jury's attention to remarks that defense counsel would wish to be overlooked. State v. Lee, 346 So.2d 682 (La.1977). Also, the *971 effect of defense counsel's repeated objections, as noted in Lee, might be to further alienate the jurors against the defendant. Particularly would this be the case where the jury is all white and blacks are charged as the result of a shooting of whites. In such a case, objection would further arouse the latent racial prejudices of the jury, and heighten the chances that the jury would enter a verdict of guilty. Furthermore, it will be noticed from the portions of the record quoted above that defense counsel did again move for a mistrial when the assistant district attorney made further racial remarks in his rebuttal.
It might be argued that since the alleged crime arose as a result of a racial incident references to race were relevant to a determination of the case, and hence the remarks did not fall within the grounds for a mistrial set forth in LSA-C.Cr.P. art. 770. As we stated in State v. Kaufman, supra, the purpose of this provision of law is to avoid the use of racial prejudice to obtain convictions. When the alleged criminal conduct arises out of an incident among persons filled with racial animosity our system of criminal justice requires that those charged with the responsibility for the conduct of criminal trials strictly avoid any actions which might influence the jury to decide the guilt or innocence of the accused upon prejudice rather than on the law and the evidence. We set forth our views at length in State v. Jones, supra, wherein we stated that racial remarks are not permissible if they appeal to racial prejudice and are not relevant either to prove the elements of the crime or to explain a relevant fact. Here, the repeated references to "whitey" and "white honkies" in connection with the defendants' supposed characterization of whites, and "animals" as a description of the defendants were obviously intended to appeal to racial prejudice, as they had no relevance to the elements of the crime of murder with which defendants were charged, and did not tend to enlighten the jury as to a relevant fact.
Quite the contrary. The jury is a time-honored and respected institution, indispensable to our system of criminal justice, and its members are expected to arrive at a verdict in a calm and detached fashion, without having latent racial prejudices, which are sometimes strong, aroused by brutal incitements to convict and thereby obtain revenge inherent in racial remarks such as those made by the assistant district attorney in this case. We cannot lend the sanction of the laws of this state, which we deem sacred, to the achievement of such base purposes. Our Codal law and our jurisprudence, compel a reversal of defendants' conviction.
Hence, we hold that a mistrial should have been granted in the murder trial of defendants, Joseph Wilson and Henry A. Moses. We set aside their convictions, vacate their sentences, and remand the case for a new trial.
REVERSED AND REMANDED.
NOTES
[*] Judges Grover L. Covington, Luther F. Cole and J. Louis Watkins, Jr. of the First Circuit Court of Appeal participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] LSA-C.Cr.P. art. 770 provides in pertinent part:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."