DANIEL L. DYSART, Judge.

\,PROCEDURAL BACKGROUND

Defendants Rayshaud E. Green and Dominique Hawthorne were jointly charged by bill of information with armed robbery, La. R.S. 14:64, while armed with a gun, of Johan Agurcia.
Defendants pleaded not guilty at their arraignment. The trial court denied defendants’ motions to suppress the evidence and identifications. At the end of a two day jury trial on August 24, 2009, a twelve-person jury found both of the defendants guilty as charged. On November 6, 2009, defendant Green was sentenced to fifty years at hard labor, without benefit of probation, parole, or suspension of sentence. Also on November 6, 2009, the trial court denied defendant Hawthorne’s motion for postverdict judgment of acquittal before sentencing him to fifty years at hard labor without benefit of probation, parole, or suspension of sentence. Both defendants subsequently filed this appeal.

FACTUAL BACKGROUND

New Orleans Police Officer Raymond Ambrose III testified that on October 19, 2008, he and his partner, Officer Molten, responded to a call of a car-jacking. They met the victim, Johan Agurcia, at a 24-hour convenience store in the 1500 |2block of Franklin Avenue. Mr. Agurcia was upset and had a small tear to his forehead, from which blood seemed to be trickling. The victim directed the officers to the 3100 block of N. Roman Street, where he believed the car-jacking had occurred. Officer Ambrose said there was a streetlight on each corner of that block and one in the middle of the block. The officers can *577 vassed the area for witnesses, but found none. He found no evidence on the scene.
New Orleans Police Sergeant Asish Shah testified that on October 19, 2008, he received a call of a suspicious person in a green Honda at Allard Boulevard and City Park Avenue. When Sgt. Shah pulled up behind the vehicle, three males left the vehicle, leaving the engine running. He believed the driver was wearing a black t-shirt, and the other two were wearing white t-shirts. The three men were detained with the assistance of Detective Hal Amos. Sgt. Shah identified crime scene photos of the victim’s vehicle and the scene. He also identified both defendants in court as being two of the individuals who had been in the victim’s vehicle.
Detective Harold Amos testified that when the three individuals in the victim’s car saw a marked police unit come on the scene, they exited and walked briskly toward Delgado College. Det. Amos identified defendants in court as two of the individuals who had been in the victim’s car. He recalled that one of the defendants was wearing basically all black and the other a white t-shirt and blue jeans. Det. Amos participated in an on-the-scene identification procedure during which he displayed each of the three individuals to the victim, one at a time. He recalled that the victim made an identification. Det. Amos testified that he went to the scene at approximately 11:57 a.m., and that the victim made his identification |sat approximately 2:00 p.m. Det. Amos confirmed on cross examination that the victim had been in his vehicle prior to identifying the defendants.
NOPD Detective Mary Colon met with the victim on the scene. He did not speak English well, but had a friend with him who translated. The victim identified the two defendants at the scene. Det. Colon identified photographs of the defendants, confirming that the photos depicted the defendants as they appeared at the time they were arrested. The victim identified both defendants at the scene that day, from a distance of approximately one car length.
Through the use of an interpreter, the victim, Johan Nahun Agurcia, testified that on October 2008 he had been out with friends on Bourbon Street. At approximately 3:30 a.m., along with his friend Alex, they drove to Chalmette to drop off another friend who had been with them on Bourbon Street. On his way back home from Chalmette he became lost and at approximately 4:00 a.m. he came to a stop sign at the 3100 block of North Roman Street in New Orleans when two individuals appeared. One of the men put a gun to his head, told him he was going to kill him, and struck him in the forehead, with the gun. The victim described that gunman— Det. Colon said the gunman was defendant Hawthorne — as wearing a black t-shirt with a white square with some type of drawing in the white square. The victim testified that he could not see the gunman’s face as he was wearing a mask. However, the victim identified the black t-shirt seized from defendant Hawthorne at the time of his arrest as the one Hawthorne was wearing at the time of the robbery. The victim stated that he had described to the police the t-shirt the gunman was wearing at the time of the initial interview. Further, the victim testified that the gunman was taller than he was which was confirmed when the defendant Hawthorne was directed to stand next to the victim before the jury.
|4The victim described the second robber, who robbed his friend Alex, as wearing a white shirt and his hair in long, little, twisted braids. The victim identified both defendants in court.
The victim testified that when he went to the location where police had recovered his car, he saw the individual wearing the *578 black shirt, who was wearing a mask during the robbery, and the one with the white t-shirt. He did not recognize the third person. When asked whether the police told him who to identify, the victim said, “No, no. I recognized them.” The victim was asked if the robber wearing the white t-shirt was wearing a mask, and he replied in the negative. The follow-up question was, “So, you were able to see his hair and face that night?” Id. The victim replied, “Only the hair and the shirt.” Id. The victim stated that while he recovered whatever had been in his vehicle when it was stolen, he did not recover any of the items that were in his pockets that had been taken by the robber, specifying his passport, cell phone and eyeglasses.
The victim testified on cross examination that he had consumed two beers on Bourbon Street on the night/early morning of the robbery — from approximately 11:30 p.m. to 3:00 a.m. The victim admitted that he could not see the face of the gunman who robbed and struck him in the face because the gunman was wearing a mask. He could not identify what type of hair the robber had. The victim was only able to identify the gunman by the black shirt that he was wearing at the time of the robbery and which he again identified at the scene where his car was recovered. He recalled that the gun used by the robber in the black shirt was a silver colored semi-automatic handgun. The victim confirmed that the individual with the white t-shirt went to the passenger side of the car during the robbery and robbed his friend, Alex.
| .GREEN — ERRORS PATENT
GREEN — ASSIGNMENT OF ERROR NO.l
HAWTHORNE — PRO SE ASSIGNMENT OF ERROR NO. 1
We will address these assignments of error and errors patent collectively, as they all concern the same issue.
A review of the record reveals one error patent as to a verdict that was not in proper form. Defendant Green also raises the issue as his first assignment of error, while defendant Hawthorne raises it as his first pro se assignment of error. While the State initially argues that defendant Green failed to object to the verdict and cannot raise the issue as an assignment of error, the verdict is part of the record that is reviewed for patent errors. See State v. Robert, 518 So.2d 1169, 1169-1170 (La.App. 5 Cir.1988) (“For the purpose of an error patent review the “record” in a criminal case includes ... the verdict ...,” citing State v. Oliveaux, 312 So.2d 337 (La.1975)). Thus, the alleged error would be renewable as a patent error, without the necessity of either defendant objecting to it.
The verdict forms as to both defendants simply read: “Guilty.” The respective verdict forms each list seven unnumbered responsive verdicts: (1) “Guilty” being the first; (2) five other verdicts of guilty of lesser offenses, beginning with “Guilty of Attempted Armed Robbery;” and (3) “Not Guilty”.
La.C.Cr.P. art. 810 sets forth the requirements for the form of the verdict as follows:
When a verdict has been agreed upon, the foreman shall write the verdict on the back of the list of responsive verdicts given to the jury and shall sign it. There shall be no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury.
| ^Defendants argue that the verdicts were defective in that neither was signed by the jury foremen, either on the back or the front. Defendants also argue that the *579 verdicts were not in the proper form because both stated only “Guilty,” without reference as to what offense.
Clearly, the verdicts did not comport with the requirement of La.C.Cr.P. art. 810 that the jury foremen sign the verdicts on the back. The verdicts were not signed by the jury foremen and the instructions on the face of the verdict forms/lists of responsive verdicts did not expressly instruct the forepersons to sign the verdict form. La.C.Cr.P. art. 811 states that if the verdict is correct in form and responsive to the indictment the court shall order the clerk to receive it, read it to the jury, and ask it if that is its verdict. If the jury answers yes, the court shall order the clerk to record the verdict and shall discharge the jury. La.C.Cr.P. art. 818 states that if the court finds the verdict is incorrect in form it shall refuse to receive it and shall remand the jury with the necessary oral instructions.
However, any errors here — the patent error of the failure of the jury forepersons to sign the verdicts, as well as the trial court errors with regard to La.C.Cr.P. art. 811 and 813 — all constitute harmless errors, in that the errors did not affect substantial rights of the defendants. See La. C.Cr.P. art. 921.[1]
In addition, to the extent that a verdict is ambiguous, “the intent of the jury can be determined by reference to the pleadings, the evidence, the admissions of the parties, the instructions, and the forms of the verdicts submitted.” State v. Anderson, 07-752, p. 9 (La.App. 5 Cir. 2/6/08), 979 So.2d 566, 571. That defendants were both charged with armed robbery is not in dispute. The jury knew 17⅛⅛. The evidence was that two individuals robbed the victim of his car and some personal belongings while armed with a gun. The placement on the verdicts of “Guilty” as the first responsive verdicts in both responsive verdict lists clearly signified that “Guilty” meant guilty of the offense charged, especially considering that the next responsive verdict was “Guilty of Attempted Armed Robbery.” In light of these factors, the jury’s verdicts of “Guilty” were, in fact, not ambiguous, but conveyed the intention of the jury to find defendants guilty of the crimes charged, armed robbery, and thus the verdicts complied with La.C.Cr.P. art. 810⅛ requirement that the verdict clearly convey the intention of the jury.[2]
There is no merit to these assignments of error.
GREEN — ASSIGNMENT OF ERROR NO. 2
In this assignment of error, defendant Green argues that the trial court erred in denying his motion to suppress the identification.
A trial court’s determination of the admissibility of identification evidence is entitled to great weight and will not be disturbed in the absence of an abuse of *580 discretion. State v. Stovall, 2007-0343, p. 17 (La.App. 4 Cir. 2/6/08), 977 So.2d 1074, 1085. In reviewing a trial court’s ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Brown, 2009-0884, p. 3 (La.App. 4 Cir. 3/31/10), 36 So.3d 974, 978 (motion to suppress one-on-one identification).
|RThe defendant bears the burden of proving that an out-of-court identification was suggestive and that there was a substantial likelihood of misidentification as a result of the identification procedure. State v. Ballett, 98-2568, p. 17 (La.App. 4 Cir. 3/15/00), 756 So.2d 587, 597; State v. Martello, 98-2066, p. 8 (La.App. 4 Cir. 11/17/99), 748 So.2d 1192, 1198. A defendant must first prove that the identification was suggestive. State v. Thibodeaux, 98-1673, pp. 20-21 (La.9/8/99), 750 So.2d 916, 932. An identification procedure is suggestive if, during the procedure, the witness’s attention is unduly focused on the accused. State v. Campbell, 2006-0286, pp. 87-88 (La.5/21/08), 983 So.2d 810, 866.
Thus, one-on-one identifications, like the one utilized by police in the instant case, are generally not favored, although such identification procedures are permissible under certain circumstances. State v. Nelson, 2008-0584, p. 5 (La.App. 4 Cir. 12/17/08), 3 So.3d 57, 60. One-on-one identifications are permissible, for example, when the accused is apprehended within a relatively short period of time after the occurrence of the crime and is returned to the scene for immediate identification. State v. Robinson, 2009-0922, p. 2 (La.App. 4 Cir. 3/10/10), 50 So.3d 158, 160, writ denied, 2010-0824 (La.11/5/10), 50 So.3d 813. Immediate confrontation assures the reliability of the identification — given that the perpetrator’s appearance is fresh in the witness’s mind — lessens the possibility that the perpetrator’s clothes or appearance will be changed, and insures early release of innocent subjects. Nelson, 2008-0584, pp. 5-6, 3 So.3d at 61. However, a one-on-one identification procedure is not suggestive per se. State v. Tapp, 99-2279, p. 14 (La.App. 4 Cir. 5/30/01), 788 So.2d 1215, 1225, citing State v. Martello, 98-2066, p. 8 (La.App. 4 Cir. 11/17/99), 748 So.2d 1192, 1199. Thus, it necessarily | ^follows that a one-on-one identification does not unduly focus the witness’s attention on the accused, per se.
In addition to suggestiveness, a defendant must prove that there was a substantial likelihood of misidentification as a result of the identification procedure. Robinson, 2009-0922, p. 3, 50 So.3d at 161. Despite the existence of a suggestive pretrial identification, an identification may be permissible if there does not exist a “very substantial likelihood of irreparable misidentification.” Manson v. Brathwaite, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977); State v. Leger, 2005-0011, p. 59 (La.7/10/06), 936 So.2d 108, 151, quoting Manson. Under Manson, the factors which courts must examine to determine, from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of misidentification include: 1) the witness’s opportunity to view the criminal at the time of the crime; 2) the witness’s degree of attention; 3) the accuracy of his prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation. Manson, 432 U.S. at 114-115, 97 S.Ct. at 2254.
In the instant case, the victim testified at the motion to suppress the identifications that he was stopped when two *581 men came from behind his car. The one on the driver’s side was wearing a mask and carrying a gun. He pointed the gun at the victim and told him he was going to kill him. The one who came from the passenger side was wearing a white t-shirt and had his hair in braids. The victim’s passenger ran. After the gunman forced the victim out of his car, the individual in the white t-shirt and braids got in the driver’s seat. The victim reported the robbery. Nine to ten hours later that day, at approximately 1:00 p.m., 11ftpolice called him and notified him that his car had been recovered. He went to the location, and three individuals were with police across the street from his car. He said at trial that the male with the black t-shirt on was inside of the police car, while the other two were outside the car. Police asked the victim if the men were the ones who stole his car and he identified two of the three men, one wearing the same black shirt with the white writing on it and the other individual with braided hair and wearing the white t-shirt. He testified that the third individual he viewed had an afro hairstyle and was not involved in the robbery. The victim denied that the police told him to pick either defendant.
The victim essentially stated on cross examination that all he remembered about the clothing worn by the individual with the braided hair was the white t-shirt and confirmed at trial that he did not see the face of the robber with the white t-shirt, and that he only remembered his white t-shirt and his braided hair.
The State cites in its appellate brief State v. Carter, 99-2234 (La.App. 4 Cir. 1/24/01), 779 So.2d 125, where this court found no error in the trial court’s denial of the defendant’s motion to suppress one-on-one identifications made by five armed robbery/attempted armed robbery victims defendant allegedly victimized in three different incidents within less than one hour. Only one of the victims had seen the defendant’s face but her companion only noticed other details such as the robber’s clothing and the gun he carried. During the two other robberies the defendant wore a mask. In Carter, this court first examined the issue of the suggestiveness of the identifications. This court held that the mere fact that the defendant was presented to the witnesses handcuffed and illuminated by a floodlight did not render the identification unduly suggestive. Carter, 99-2234, pp. 14-15, 779 So.2d at 136. This court found no evidence to indicate that the officers forced or coerced the witnesses to identify the defendant as the robber.
In the instant case, defendant Green argues that the identification was suggestive in that he and the other two individuals were surrounded by police and close to the victim’s car when the victim arrived. He submits that directly focusing the victim’s attention on two specific black males, after first telling the victim that his car had been recovered, was suggestive. Defendant Green also argues that the identification procedure was suggestive because he was taken to the victim in the company of a person wearing a black t-shirt.
It can fairly be said that in the instant case, police telling the victim his car had been recovered and having him see it across the street from where he was shown defendant Green and the two other males was somewhat suggestive — although Green cites no direct evidence that the victim was told the three individuals had been found in the car. In addition, it is not known whether the victim was told before or after making the identifications that the belongings stolen from him, his cellphone and passport among them, had not been found. It is also true that defendant Green was the only one of the three *582 individuals exhibited to the victim on the scene by police who had his hair in braids and wore a white t-shirt. However, in a true one-on-one identification — unlike in the instant case where it actually was a one-on-two or one-on-three identification— there is only one defendant to identify.
Defendant Green also notes that the victim remembered the more unique (compared to a white t-shirt) black t-shirt worn by the gunman, alleged to have been defendant Hawthorne. Hawthorne was wearing such a black t-shirt at the identification. However, the victim testified at trial that Hawthorne was inside of a 112police car at the identification while defendant Green and the third individual, like Green wearing a white t-shirt, were outside the car. The three were shown to the victim separately. Thus, defendant Green has failed to establish that the victim did not identify Green before he viewed defendant Hawthorne in the black t-shirt in the police car.
Further, even assuming the identification procedure was suggestive, application of the five Manson, supra factors shows that defendant Green has failed to prove that there was a substantial chance of misidentification.
First, although the robbery occurred in darkness, Officer Ambrose testified that there was a street light on each corner of the block and one in the middle of the block. The victim recalled the defendant Green getting into the driver’s seat of his car. The victim had no problem remembering defendant Green’s distinctively braided hair and white t-shirt — and his identification of Green was based on his recollection of Green’s braided hair and t-shirt. The victim also remembered defendant Hawthorne’s black t-shirt with the white square.
Except to the extent that he did not see defendant Green’s face, the evidence is that the victim paid attention during the robbery. He remembered the gun carried by the gunman, the t-shirts worn by the perpetrators, defendant Green’s distinctively braided hair, and what occurred during the robbery.
While defendant Green assails the victim’s inability to provide a more detailed description by incorporating more physical characteristics, the defendant essentially concedes that the victim’s prior description of the white t-shirt and braided hair was accurate.
When asked during the motion to suppress hearing whether he was able to identify the two individuals that robbed him, the victim stated, “Yes, surely.” 11sDefendant Green fails to cite any evidence calling into question the certainty of the victim’s identification at the time it was made. The burden is on the defendant to show that the identification was unreliable.
The identifications by the victim in the instant case were made only nine hours after the crimes were committed. While nine hours between the crime and the identification might be somewhat longer that in many, even most, one-on-one identification scenarios, it is not long at all insofar as identification procedures in general and was done within a short period of time after the defendants were apprehended with the victim’s car.
Considering all five of the Manson factors, even assuming the identification procedure might have been somewhat suggestive, defendant Green has failed to establish that the victim’s identification of him was unreliable.
There is no merit to this assignment of error.
GREEN — ASSIGNMENT OF ERROR NO. 3
HAWTHORNE — PRO SE ASSIGNMENT OF ERROR NO. 2
We address these assignments of error collectively, as they concern the *583 same issue. Defendants argue that the trial court erred in overruling defense objections to comments by the prosecutor during closing argument.
During either closing or rebuttal argument, the prosecutor stated:
MR. PHILLIPS:
They want you to believe that Mr. Agurcia is an outlaw. I’m going to tell you what I mean by that. YOU look up the word outlaw in the dictionary, you know what it would tell you? Someone who is not afforded the benefits and the protections of the law.
MR. BELJEAN:
I’m going to object to that, Judge. Defense is not—
|14THE COURT:
That’s overruled.
MR. PHILLIPS:
They want you to take this law, they want you to take this book, and throw it away because it don’t matter when it comes down to Mr. Agurcia.
MR. MALVEAU:
Judge, I’m going to object.
THE COURT:
Approach the bench.
(DISCUSSION HAD AT BENCH W/OUT RECORD.)
MR. PHILLIPS:
You want to feel sorry for somebody? Feel sorry for this man working hard to support a family, three kids. Came out here to work, not run around putting guns in peoples’ faces and steal their cars and their wallets and their other belongings. That’s who you feel sorry for. That’s who you feel sorry for, ladies and gentlemen.
MR. BELJEAN:
Judge, I’m going to object to the State asking the jury for sympathy and decide the case based on sympathy.
THE COURT:
Overruled.
Defendants allege that the prosecutor referred directly or indirectly to the victim’s race, color or national origin.
La.C.Cr.P. art. 770 provides that “[ujpon motion of a defendant,” a mistrial “shall be ordered” when a remark or comment, made within the hearing of the jury by the judge in argument, refers directly or indirectly to “[r]ace, ..., color or [^national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury.”
At no point in the instant case did either defense counsel move for a mistrial in connection with his objections to the prosecutor’s alleged improper argument. Therefore, defendants were not entitled to any relief under La.C.Cr.P. art. 770. Defendant Green suggests that trial counsel did not have to move for a mistrial in order for reversal of their convictions on this issue, citing State v. Wilson, 404 So.2d 968 (La.1981), a decision in which the Louisiana Supreme Court noted that because a single appeal to racial prejudice furnishes grounds for a mistrial — upon objection and motion for a mistrial — “it was unnecessary for defense counsel to move for a mistrial on each occasion when a racial remark was made.” Wilson, 404 So.2d at 970. However, in Wilson, defense counsel did move a mistrial, at least twice, based on the prosecutor’s direct reference to race. Wilson does not stand for the proposition that a defendant can fail to move for a mistrial based on prosecutor’s reference to race but, on appeal, seek reversal of his conviction based on the prejudicial effect of such comment(s).
*584 Moreover, in the instant case the prosecutor did not directly refer to race or national origin. Rather, the prosecutor’s use of the term “outlaw” suggested that he was attempting to address any potential prejudice against the victim insofar as whether he was in this country legally. There is no indication that the prosecutor’s comments were intended to prejudice either of the defendants based on their race.
Generally, the scope of closing argument “shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. The state’s rebuttal shall be confined to answering the [ ^argument of the defendant.” La.C.Cr.P. art. 774. Prosecutors may not resort to personal experience or turn argument into a plebiscite on crime. State v. Williams, 96-1023, p. 15 (La.1/21/98), 708 So.2d 703, 716. However, prosecutors have wide latitude in choosing closing argument tactics. State v. Casey, 99-0023, p. 17 (La.1/26/00), 775 So.2d 1022, 1036. Further, the trial judge has broad discretion in controlling the scope of closing arguments. Id. Even if the prosecutor exceeds the bounds of proper argument, a reviewing court will not reverse a conviction unless “thoroughly convinced” that the argument influenced the jury and contributed to the verdict. State v. Frank, 99-0553, p. 30 (La.5/22/07), 957 So.2d 724, 743; State v. Ricard, 98-2278, p. 4 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 397. Even where the prosecutor’s statements are improper, credit should be accorded to the good sense and fair-mindedness of the jurors who heard the evidence. Williams, supra; Ricard; supra.
In these assignments of error defendants also cite other comments by the prosecutor during closing argument, including telling the jurors that they were “smarter than to go for the hokey doke,” referring to defendant Green having a short hairstyle at trial, in contrast to the long, braided hairstyle he allegedly wore at the time of robbery. Defense counsel objected on the ground that the prosecutor was referring to facts not in evidence, but the objection was overruled. Defendant Green also complains that the prosecutor “crossed the line” and attempted to testify during argument as to what he had not produced for the jury, telling them that police had dusted for fingerprints but found none. Id. at p. 82. Defense counsel again objected, but the objection was overruled. Defendant Hawthorne likewise complains of this statement by the prosecutor.
|17It cannot be said that one would be “thoroughly convinced” that these comments influenced the jury and contributed to the verdicts.
There is no merit to these assignments of error.
GREEN — ASSIGNMENT OF ERROR NO. 4
In his fourth and final assignment of error, defendant Green argues that his sentence is unconstitutionally excessive.
La. Const, art. I, § 20 explicitly prohibits excessive sentences; State v. Baxley, 94-2982, p. 4, (La.5/22/95), 656 So.2d 973, 977. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677. Courts have the power under La. Const, art. I, § 20 to declare to a sentence excessive, although it falls within the statutory limits provided by the legislature. Id., 97- *585 1906, p. 6, 709 So.2d at 676. When a trial court determines a sentence from a carefully tailored penalty statute, such as the statute applicable in the instant case, La. R.S. 14:64, there is a strong presumption that the sentence is constitutional. State v. Bunley, 2000-0405, p. 24 (La.App. 4 Cir. 12/12/01), 805 So.2d 292, 308.
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1 and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189; State v. Robinson, 98-1606, p. 12 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 127. If adequate compliance with La. C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the 11ssentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Ross, 98-0283, p. 8 (La.App. 4 Cir. 9/8/99), 743 So.2d 757, 762; State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, 185.
In the instant case, defendant Green was convicted of armed robbery, a violation of La. R.S. 14:64, providing for a sentence upon conviction of imprisonment at hard labor for not less than ten years and for not more than ninety-years, without benefit of parole, probation, or suspension of sentence. Defendant’s sentence of fifty years at hard labor is approximately one-half of the maximum sentence. During defendant Green’s sentencing it was noted that he had a prior conviction for illegal possession of stolen things, and the trial court stated that he was a second offender subject to being charged as a habitual offender. Green’s prior conviction was for a felony-grade illegal possession of stolen things. In sentencing defendant Green the trial court adopted all of the reasons it had stated for the record as to codefendant Hawthorne concerning the violent nature of the crime. In sentencing defendant Hawthorne the court had noted that the victim, who had not attempted to resist the robbery, was struck with the gun, and that the crime created a risk of great bodily harm and death to more than one person. The trial court further stated in sentencing defendant Green that it found defendant was in need of correctional treatment and there was an undue risk that during a period of suspended sentence or probation that defendant would commit another crime. The court stated that a lesser sentence would deprecate the seriousness of defendant Green’s crime.
In State v. Wilson, 452 So.2d 773 (La.App. 4 Cir.1984), this court affirmed a ninety-nine year sentence for armed robbery imposed on a defendant with four prior convictions, for criminal trespass, possession of stolen property, soliciting for prostitution, and theft. In sentencing the defendant the trial court had stated that it was convinced that there was only one sentence that would keep the defendant from hurting other people, noting that the defendant was getting worse and worse.
More recently, in State v. Thomas, 98-1144, p. 2 (La.10/9/98), 719 So.2d 49, 50, the Louisiana Supreme Court affirmed three consecutive sentences totaling between thirty-five and fifty years, stating:
Even granting the consecutive nature of the penalties imposed on all three counts, the defendant’s total sentence remains within the 35 to 50 year range this Court has found acceptable for first offenders convicted of armed robbery. See, e.g., State v. Nealy, 450 So.2d 634, 640 (La.1984); State v. Walk *586 er, 449 So.2d 474 (La.1984); State v. Dunns, 441 So.2d 745, 746 (La.1983); State v. Huntsberry, 439 So.2d 432, 433 (La.1983). (Emphasis added).
Even considering defendant’s youth — he was nineteen years old at the time of his arrest — it cannot be said that the sentence makes no measurable contribution to acceptable goals of punishment, is a purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime.
There is no merit to this assignment of error.
HAWTHORNE — ERRORS PATENT AND ASSIGNMENT OF ERROR NO. 5
These issues will be addressed collectively, as the arguments made concern an error patent.
This court has held that the failure of a trial court to wait at least twenty-four hours before sentencing the defendant after denying his motion for post-verdict Lojudgment of acquittal constitutes an error patent on the face of the record. See State v. Wilson, 526 So.2d 348, 350 (La.App. 4 Cir.1988). Defendant Hawthorne raises this as his fifth assignment of error.
La.C.Cr.P. art. 873 expressly requires a twenty-four hour delay between the denial of both a motion for new trial and a motion in arrest of judgment. In Wilson, this court held that a trial court’s failure to delay sentencing for at least twenty-four hours after denying a motion for a new trial or after denying a motion for post-verdict judgment of acquittal should be treated analogously. See also State v. Davis, 2002-2061, p. 15 (La.App. 4 Cir. 10/8/03), 859 So.2d 776, 785, where this court vacated the defendant’s sentence and remanded the case for a ruling on his motion for post-verdict judgment of acquittal, stating “[i]f the motion is denied, a sentencing hearing shall be held no earlier than twenty-four hours after the final disposition of the motion.”
Under La.C.Cr.P. art. 873, if a motion for new trial or motion in arrest of judgment is filed, sentence shall not be imposed until at least twenty-four hours after the motion is denied, unless the defendant “expressly” waives the delay or pleads guilty. It is well-settled that a defendant may implicitly waive the twenty-four hour delay. See State v. Pierre, 99-3156, p. 7 (La.App. 4 Cir. 7/25/01), 792 So.2d 899, 903 (implicit waiver where defense counsel responds in the affirmative when trial court inquires if he is ready for sentencing). In State v. Robichaux, 2000-1234, p. 7 (La.App. 4 Cir. 3/14/01), 788 So.2d 458, 464-465, at the beginning of the sentencing hearing, defense counsel noted: “Judge, prior to the sentencing, I would like to put on the record an oral motion for a new trial ...” This court held that “by virtue of the defense counsel’s statement, defendant announced |21his readiness for sentencing, which implicitly waived the waiting period.” Robichaux, 2000-1234, p. 7, 788 So.2d at 465.
In the instant case, similar to Ro-bichaux, counsel for defendant Hawthorne announced at the sentencing hearing, just prior to sentencing, that defendant was ready for sentencing, but that just prior to sentencing he had filed a motion for post-verdict judgment of acquittal:
MR. MALVEAU:
Your Honor, Eric Malveau, on behalf of Mr. Hawthorne. Ready for sentencing, Judge.
Just prior to sentencing, Judge, I filed a Motion for Post Verdict [sic] Acquittal. ¾: ⅜ ⅝ ⅝ # ⅜
THE COURT:
—or the police report. The Court has before it a Motion for Post Judgment Verdict of Acquittal. I have reviewed *587 the motion, and it is denied, and I note your objection.
MR. MALVEAU:
Thank you, Your Honor.
Similar to Robichaux, by virtue of defense counsel’s statement, he announced defendant’s readiness for sentencing, thus implicitly waiving the twenty-four hour delay.
There is no merit to this assignment of error.

HAWTHORNE-ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, defendant argues that the trial court erred in denying his motion to suppress the identification.
For the reasons set forth in addressing defendant Green’s argument as to this issue, there is no merit to this assignment of error. Both men were identified in the lósame identification procedure. Even though Hawthorne wore a mask during the robbery, the victim noted his distinct t-shirt, which Hawthorne was still wearing nine hours after the robbery. The victim seemingly had more of an opportunity to view defendant Hawthorne than he did defendant Green, as it was Hawthorne who accosted the victim with the gun.

HAWTHORNE-ASSIGNMENT OF ERROR NO. 2

In this assignment of error, defendant Hawthorne argues that the trial court erred in finding the victim’s description of the clothing of the perpetrators to Officer Ambrose to be hearsay and in excluding that testimony from consideration by the jury-
Defense counsel first questioned Officer Ambrose on cross examination, during the State’s presentation of its case-in-chief, as to whether any description of the perpetrators was put out over the police radio. Officer Ambrose responded that he was not sure whether he or his partner may have done that. Counsel for defendant then questioned whether the description he radioed out would have been two black males with white t-shirts on. The State objected on the ground that the answer would be based on hearsay. Defense counsel countered that the victim’s description given to Officer Ambrose would be admissible as a statement by a party, the alleged victim. The trial court sustained the objection on hearsay grounds. The victim had not testified at the time Officer Ambrose testified in the State’s case-in-chief, and defendant acknowledges in his brief the defense’s questioning of Officer Ambrose at this time “... may have been premature impeachment.”
During the victim’s testimony defendant counsel asked him on cross examination: “Okay. So you didn’t tell the officers who met you at the gas station | ^that it was two black males wearing white t-shirts?” The victim replied: “No. One had a black shirt, and one had a white shirt.” Id.
After the State rested at trial, counsel for defendant Hawthorne recalled Officer Ambrose as its only witness. Counsel attempted to question the officer regarding the description of the suspects given to him by the victim. The State objected on hearsay grounds. The trial court stated that it was sustaining the objection, citing La. C.E. arts. 801 through 806.
Defendant argues that the information sought to be introduced through the testimony of Officer Ambrose was not hearsay, as it was testimony by an officer regarding information received during the course of an investigation. As such, the statement by the victim to Officer Ambrose was not offered to prove the truth of the matter asserted, but rather to explain the pertinent progress of the investigation. Further, defendant argues that the victim’s *588 statement to Officer Ambrose was admissible as a prior inconsistent statement under La. C.E. art. 801(D)(1) and 607(D)(2).
While both of these arguments have merit, the issues are not preserved for appellate review. The defendant objected, but did not proffer the testimony of Officer Ambrose. La. C.E. art. 103(A)(2) provides that in order to preserve the right to appeal a trial court ruling that excludes evidence, the defendant must make the substance of the evidence known to the trial court. Here, defendant failed to proffer the substance of Officer Ambrose’s testimony on the excluded testimony, and is therefore precluded from raising the issue on appeal. See State v. Stevenson, 02-0079 (La.App. 5 Cir. 4/30/02), 817 So.2d 343; State v. Adams, 537 So.2d 1262 (La.App. 4 Cir.1989).
This assignment of error is not considered.
| MHAWTHORNE — ASSIGNMENTS OF ERROR NO. 3 & NO. 4
In his third assignment of error, defendant Hawthorne argues that his fifty-year sentence is unconstitutionally excessive. His fourth assignment of error is that his trial counsel was ineffective in failing to file a motion to reconsider his sentence based on excessiveness, thus barring defendant from raising the issue of excessiveness in the instant appeal. However, for the following reasons, there is no merit to these assignments of error.
Defendant Hawthorne’s defense counsel did fail to file either a written or oral motion to reconsider sentence, or to object to the sentence.
Under La.C.Cr.P. art. 881.1, the failure to make an oral objection to the sentence at the time of sentencing or file a timely motion to reconsider sentence, setting forth the specific ground of excessiveness, shall preclude the defendant from raising the claim of excessiveness on appeal or review. This court has held that the failure to file a motion to reconsider sentence or orally object to the sentence at the time it is imposed precludes a defendant from raising a claim about his sentence on appeal. State v. Alexander, 2006-1274, p. 10 (La.App. 4 Cir. 5/16/07), 958 So.2d 1203, 1208; State v. Wilson, 2006-1421, pp. 19-20 (La.App. 4 Cir. 3/28/07), 956 So.2d 41, 52-53.
“As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post-conviction relief in the trial court where a full evidentiary hearing may be conducted if warranted.” State v. Howard, 98-0064, p. 15 (La.4/23/99), 751 So.2d 783, 802. However, where the record is sufficient, the claims may be addressed on appeal. State v. Bordes, 98-0086, p. 7 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147. Ineffective assistance of counsel claims are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Robinson, 98-1606, p. 10 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 126. In order to prevail, the defendant must show both that: (1) counsel’s performance was deficient; and (2) he was prejudiced by the deficiency. State v. Jackson, 97-2220, p. 8 (La.App. 4 Cir. 5/12/99), 733 So.2d 736, 741. Counsel’s performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed by the Sixth Amendment. Strickland 466 U.S. at 686, 104 S.Ct. at 2064; State v. Ash, p. 9 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 669. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant must show that there is a reasonable probability that, but for coun *589 sel’s deficient performance the result of the proceeding would have been different; “[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 693, 104 S.Ct. at 2068; State v. Guy, 97-1387, p. 7 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 236.
In order to determine whether Hawthorne’s counsel was ineffective, it is necessary to determine whether the sentence imposed on him was unconstitutionally excessive. It was not, for most of the same reasons set forth in previously finding that codefendant Green’s sentence was not unconstitutionally excessive. In sentencing Hawthorne, the trial court stated that it had considered the provisions of La.C.Cr.P. arts. 893 and 894.1. The court noted that Hawthorne had been the gunman in the instant case. He had pointed his handgun at the victim and his passenger. He put the gun to the victim’s face and struck the victim in the forehead with the gun. The trial court found that there was an undue risk during a | ^period of any suspended sentence or probation that defendant Hawthorne would commit another crime.
The court found that Hawthorne was in need of correctional treatment or a custodial environment that could be provided most effectively by his commitment to an institution. Importantly, the court found that any lesser sentence would deprecate the seriousness of his crime. The court found that Hawthorne’s striking of the victim with his handgun during the commission of the crime manifested deliberate cruelty to the victim, with the court noting that the victim did not attempt to resist the armed robbery. The court further found that the defendant Hawthorne created a risk of death or great bodily harm to more than one person when he pointed the gun at the driver and passenger. The court expressly took into account the fact that the defendant had no prior convictions.
As noted in addressing defendant Green’s claim that his sentence was unconstitutionally excessive, the Louisiana Supreme Court has expressly noted that it has found sentences from thirty-five to fifty years acceptable for first offenders convicted of armed robbery. See Thomas, 98-1144, p. 2, 719 So.2d at 50.
Even considering defendant Hawthorne’s youth — he was twenty years old at the time of his arrest — it cannot be said that the sentence makes no measurable contribution to acceptable goals of punishment, is a purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime.
Given that defendant Hawthorne’s sentence is not unconstitutionally excessive, it cannot be said that his counsel’s failure to file a motion to reconsider sentence or to orally object to the sentence prejudiced defendant. Thus, counsel was not ineffective.
127There is no merit to defendant Hawthorne’s Assignments of Error No. 3 and No. 4.

CONCLUSION

Accordingly, for the foregoing reasons, the defendants’ convictions and sentences are affirmed.

AFFIRMED

BONIN, J., concurs with reasons.

. A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.

. The State attaches to its appellate brief copies of jury polling slips, apparently from the verdicts as to both defendants, and relies on them in its argument as to the instant assignment of error that the verdict was not in the proper form. However, these documents were not properly filed and cannot be considered by this court. See State v. Allen, 99-2358, p. 11 (La.App. 4 Cir. 3/21/01), 788 So.2d 62, 69 (photocopies of documents not considered by this court where State attached them to a motion to supplement the record, which motion to supplement was, in turn, simply attached to the State’s appellate brief instead of being properly filed with this court).